No. 6.—John C. Perkins, *et al.* plaintiffs in error, *vs.* Joseph Attaway, Guardian, defendant in error.

[1.] The rule is well settled, that all that is necessary to show jurisdiction must appear on the face of the record, in the proceedings of a Court of limited jurisdiction. But whether letters of guardianship can be said to be a part of the record of a Court of Ordinary. *Query ?*

[2.] The Court of Ordinary in our State, so far as testate and intestate estates are concerned, cannot be deemed a Court of limited jurisdiction in the sense contemplated by the above rule. And as regards the subject-matter of such estates, every presumption is to be made in favor of the jurisdiction of the Court of Ordinary.

[3.] Where upon trial of an issue of damage or no damage, by reason of the interposition of a claim under our Statute, it was proposed to prove that a tenant of the claimant's had unlawfully sold a set of mill-irons, on the premises claimed, and that they had been thus removed from the premises: *Held,* that this was not damage resulting from delay only, such as is contemplated by the Statute, but was a *tort* by the tenant, for which he is liable to the plaintiff.

[4.] Where in such a case a witness, an attorney at law, and advising counsel for the claimants, stated that he had advised the withdrawal of the claim to avoid damages: *Held,* that this testimony was proper, as material to the inquiry, whether or not, the claim had been continued unreasonably, after the claimants were advised of its weakness.

[5.] Where upon trial of such an issue, the Court instructs the jury, that "the queston of title was settled, and could not be considered by them :" *Held,* that if by this, the Court designed to say, that it was not necessary for the jury to consider this title, in order to determine whether or not the claimants in this case, were entitled to the premises in dispute, the charge was right: but wrong, if the Court meant to say, that the jury might not look to the title, in order to ascertain whether or not the claimants had probable ground for their claim, and may have interposed it in good faith.

[6.] Where there was no testimony of grossly unskilful advice given by counsel, unless the failure of the claimants to recover, constituted such evidence, and the Court charged, that if the claimants made this claim under advice of counsel, which was wrong and grossly unskilful, they were not protected or excusable: *Held,* that this was charging upon a supposed state of facts, which did not exist, and was erroneous.

[7.] If a claim case be commenced and continued under and *by reason of* advice of counsel in good faith sought and acted on, even though such advice prove to be founded upon erroneous views, the claimants are not responsible for damages, as having interposed the claim for delay only.

[8.] If a claim be at first entered in good faith, and afterwards, the claimant

discovers its weakness, and that it ought not to prevail, and does not withdraw or dismiss the same within a reasonable time after such discovery, he is liable upon final verdict against him, for damages resulting from such continuance of the claim—just as if the claim had been first interposed for delay only.

[9.] When there is some evidence on both sides, and the preponderance against the verdict is not so great as to suggest improper bias, or gross misapprehension, a reviewing Court will not disturb the verdict, because it is against the weight of evidence.

Claim, in Coweta Superior Court. Tried before Judge HILL, March Term, 1853.

The facts of this case are as follows:

Nicholas Dyer had given a mortgage to Sarah Backus as natural guardian of her minor children, covering a certain lot of land. This land was afterwards levied on by a *fi fa.* (younger than the mortgage) against Dyer and sold, and John C. Perkins and Bennett H. Conyers became the purchasers. The mortgage was subsequently foreclosed, and the mortgage *fi fa.* levied on the land, and Perkins and Conyers interposed their claim. At September term, 1849, the claim was withdrawn, but the plaintiff in *fi. fa.* (Joseph Attaway, who had become the guardian of said children,) insisted on going to trial, for the purpose of claiming damages for interposing a claim for delay only. This being the issue, the plaintiff on the trial introduced his letters of guardianship from the Court of Ordinary of Coweta County, to which claimants objected, on the ground that they showed on their face, no ground of jurisdiction of the said Court, which objection was overruled by the Court.

At a further stage of the trial, for the purpose of enhancing damages, the plaintiff offered testimony to show that Perkins and Conyers, while in possession of the land, had rented it to one Dorster, who had sold certain mill-irons, belonging to a mill on the premises, thus injuring the property. To this testimony claimants objected, unless knowledge of the fact could be brought home to them, which objection the Court overruled and admitted the testimony.

The claimants, on their part, introduced a receipt from Mrs.

John C. Perkins *et al. vs.* Joseph Attaway, Guardian.

Backus, as natural guardian of the children, in full satis-
faction of her mortgage against Dyer, which had been exhib-
ited to the public at the sale, when they bought the land.    They
introduced also, William Dougherty, esq., who testifies that he
had, as an attorney, advised the interposition of the claim—that
he had filed a bill in Equity, in aid of the claim which was taken
to the Supreme Court, and decided against them ; that on this de-
cision, he had advised the withdrawal of the claim, which was
done.    Upon cross-examination, this witness stated that he ad-
vised the claim to be withdrawn, to avoid damages—to this, ob-
jection was made by claimants, and overruled.    The plaintiff in
rebuttal, proved by Y. J. Long, esq., the attorney for the estate
of these minor children of Backus, that when the receipt from
Mrs. Backus to Dyer, was read to the crowd on the day of
the sale, under Hubbard's execution, as above stated, that he
had publicly stated that he believed it had been procured by
fraud.    And the witness went on to state circumstances, from
which it might be inferred that Conyers, one of the claimants,
heard what he said on the occasion.    This testimony was
objected to by the claimants, but admitted by the Court.

When the testimony was concluded, the Court charged the
jury :

That the simple question for them to decide, was whether the
claimants made this claim for delay and delay only ; that the
question of title was not before them ; and it was not for them
now to decide, whether the claimants had a good title to the
land or not, that the question was settled.    That if the claim-
ant made this claim, under the advice of counsel, which was
wrong and grossly unskilful, they were not protected or ex-
cusable ; but if they acted upon such advice, which resulted
in injury to the plaintiff, the claimants were responsible in
damages to the plaintiff, and the counsel was responsible to
the claimants, just as a surgeon is responsible for an unskilful
operation in surgery.

That if the claimants made this claim in the first instance,
in the honest belief that their title was good, and afterwards
became convinced it was not good, and ought not to prevail,

and did not withdraw their claim as soon as such discovery was made, and the forms of Law would admit, they were liable for damages, just as if the claim was made for delay in the first instance.

To all of which charges of the Court, as well as to the several rulings, which during the trial the Court had made against the objections of claimants, the claimants excepted, and having on the same grounds, moved for a new trial in the Court below, and the same being refused, they assign the same as error.

B. H. HILL, for plaintiff in error.

SIMMS, for defendant.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] It is alleged in this case, that the Court committed error, by permitting the letters of guardianship to go as evidence to the jury, when there was nothing appearing in said letters to show jurisdiction in the Court granting them.

We think that there is here a slight misapprehension of the principle which the counsel seeks to apply. The rule is well settled, that all that is necessary to show jurisdiction, must appear on the face of the record, or in the proceedings of a Court of limited jurisdiction. But we are not sure that the rule applies to a case like this. The letters of guardianship cannot properly be said to be a part of the record of the Court of Ordinary granting it, or of the proceedings. They are the act of the Clerk, or (now) of the Ordinary, acting as his own Clerk; and are intended only as *prima facie* evidence of the record or proceedings of the Court.

[2.] However this may be, we will put our decision on this point upon broader grounds.

It was the opinion of this Court, when first called on to apply the principle above cited, to the Courts of Ordinary in our State, that that Court should be regarded as a Court of limited jurisdiction, and in the argument of this cause at bar, the

case of *Grier vs. McLendon*, 7 *Geo. R.* 362, is referred to as containing this exposition of opinion. It is true, that in that case the Court does thus apply the rule stated. But subsequent research, reflection and argument, as I am authorized by my associated brethren to say for them, have satisfied the Court, that the rule as laid down in the case of *Grier and McLendon* should be relaxed.

In the case of *Worth et. al. vs. Johnson et. al.* 8 *Geo. R.* 236, an evident inclination towards the view now entertained, and distrust of what had been previously ruled is manifested. In the subsequent case of *Tucker vs. Harris*, 13, *Geo. R.* 1 after hearing a very able and learned argument on this subject, the Court became satisfied, that the rule was not strictly applicable to our Courts of Ordinary; and so decided. This decision, as I am informed, was made by two of the Court only. Judge *Warner* for some good and sufficient reason, not presiding in the case. But I am authorized to say, that to the decision, after it was made, that Judge gave his entire concurrence.

We now hold, as in that case, that the Court of Ordinary in our State, cannot be deemed a Court of limited jurisdiction in the sense contemplated, by the reason of the rule under consideration. That our Court of Ordinary, as regards testate and intestate estates, is a Court of general jurisdiction, in the same way in which in our State the Superior Court is a Court of general jurisdiction; for that Court, in the most extensive sense of the term, cannot be said to have a general jurisdiction. Over the subject of testate and intestate estates, the Court of Ordinary has entire and complete jurisdiction, created by the Constitution, and not by Statute, until the case be removed by appeal—just the same jurisdiction, until such appeal, as the Superior Court has after it. As regards the subject-matter of such estates then—every presumption in favor of the jurisdiction of the Court of Ordinary should be made, which should be made in favor of the Superior Court, after the case reaches it. And there can be no doubt, that the rule to which we have been referring, would not be appli-

cable to the Superior Courts. But I refer to the case of *Tucker vs. Harris,* for the reasons of this opinion more at large.

In our judgment, no error was committed by the Court below, in admitting the letters of guardianship.

[3.] During the trial of this case, the testimony of one Harrison Eason was permitted by the Court to be read in evidence, in which the witness testified that he purchased a set of mill-irons from the tenant of the tract of land, which was claimed.

It was insisted that the claim was interposed for delay only; and damages were on this account claimed. Whether or not such damage had resulted from this claim, was the issue tried in this case. The testimony in question, was offered, to show, that while the claimant was in possession, his tenant, Dorster, sold this set of irons, belonging to the place, to the witness; and they were removed from the place, to the loss and damage of the plaintiffs.

In our opinion, this was not such damage as is contemplated by our Statute. It was not damage resulting only from the delay occasioned by the claim; but it was a *tort* committed by the tenant, for which he was liable; and there was *quoad* this act, no privity between the *tort feaser* and these claimants. The Court below, therefore, erred in our opinion, in permitting this testimony to go as evidence of such damage.

[4.] During the progress of the cause, William Dougherty and Young J. Long, esqr's were permitted to give testimony, to which objection has been made by the plaintiffs in error.

Mr. Dougherty stated upon cross-examination, that after the decision of the Superior Court, (on points arising out of the main issue in the case, and which had been taken to this Court and decided) he had advised the withdrawal of the claim to avoid damages. This testimony was in our opinion correct. For reasons which will be hereafter found in the opinion of this Court, damages may be recovered, either for the interposition of a claim for delay only; or a continuance of such claim for delay only, and after a discovery of its injustice, though it were in good faith interposed.

John C. Perkins *et al. vs.* Joseph Attaway, Guardian.

Mr. Dougherty's testimony, consequently, was material to the inquiry, as to whether or not this claim had been continued unreasonably after the claimants were advised of its weakness in Law. The testimony was material, in order to show the *animus* of the claimants in continuing to keep the case pending, if they did so keep it; and in this point of view was proper.

The testimony of Mr. Long was offered as showing or tending to show, that Mr. Conyers, one of the claimants, heard what he, the witness proclaimed on the day of sale, referred to in the statement of facts, as to his believing that the receipt was fraudulent, and that he would not give up the lien of the mortgage; and that notwithstanding this, Conyers persisted in his claim. Certainly this was weak testimony, for the purpose offered. But it was some testimony, and may, according as it was received by the jury, in connection with all the proof, have been considered as serving also to show the motive of the claimants, in commencing and continuing the claim—and in this point of view it too was proper.

[5.] In his charge to the jury, His Honor Judge *Hill* instructed them, that "the question of title was settled, and could not be considered by them, and that the only question for them was, whether the claim was interposed for delay only."

The Court, in all probability, intended to be understood as saying, that the question of title *as such*, was not then in controversy; that is to say, that it was not necessary for the jury to determine in this proceeding, whether or not the claimants were to have and take the premises in dispute. If the Court intended to say, that the question of title was not to be considered in that investigation, and could not be looked to as evidence of the motive, in claiming or continuing the claim, then the Court was wrong. Of course, if upon trial of this issue, it was found that the claimants had strong probable cause to believe that they had a good title in law to the premises, and if they could show by proof that they had such title, this title would afford (even though it had proven upon final trial in Court, not to be the best title to the premises) strong

presumptive evidence in favor of the conclusion, that the claim was interposed, not for delay only, but in good faith to try the strength and sufficiency of this title.

[6.] Further, the Court in this case, charged, "that if the claimants made this claim under the advice of counsel which was wrong and grossly unskilful, they were not protected nor excusable."

In two respects, this portion of the charge, was, in our opinion, wrong.

First, there was no evidence of grossly unskilful advice by counsel in the case. Nothing could be looked to as wearing the shape of such testimony, except the failure of the claimants to succeed in their cause. And we think that it would indeed be laying down a new and dangerous rule, if we were to sanction the position, that the final disposition of a cause in Court is to be considered as the measure of the counsel's skill in advising its prosecution; or that a counsel's success in a case, is to be always considered the test of his skill in advising its institution or continuance.

It is true, that the claimants failed in this cause; but such failure is no evidence that they were not well and judiciously advised by their counsel. We have no hesitation in saying, that in our opinion, our brother who advised, and for a time prosecuted this claim, gave judicious and proper advice. It was certainly a point of difficulty which was presented to him, depending on circumstances which he could not entirely foresee; and on legal principles, upon which there might well be a difference of opinion, among the most learned of the profession.— And I have authority to say, that but for very peculiar circumstances influencing the application of the law, and which could not perhaps have been anticipated by the counsel, the opinion of this Court upon the main issue might have been different, and the result accordingly have been otherwise.

. It was erroneous then for the Court to charge upon a supposed state of facts, viz : the unskilfulness of counsel, which did not exist in the evidence ; because it is not expedient, proper,

John C. Perkins *et al. vs.* Joseph Attaway, Guardian.

or legal that the failure of the claimant's case should be regarded as such evidence.

[7.] Taking the view which we do of this point, it is also our opinion that in this connexion the Court below should have charged, that if the case were in good faith commenced and continued by the claimants, under and by reason of advice of counsel in equal good faith, sought and acted on by them, even though such advice proved to be founded upon an erroneous view of the matter, still they were not responsible as having interposed the claim for delay only.    And we think it was error in the Court not so to have charged the jury.

[8.] It is alleged as error, that the Court below also charged, that if claimants made this claim in the first instance honestly, and from confidence in their title, and any time afterward discovered it was not good and ought not to prevail, and did not withdraw their claim, as soon as such discovery was made, and the forms of law would allow, they were liable for damages just as if the claim was made for delay in the first instance."

This obviously is the spirit of the Statute ; and unless this construction be given to the Act, the mischief contemplated is but partially remedied.    It is a remedial Statute, and should be liberally construed.    And we agree with Judge *Hill* in holding that a continuance of a claim case, which had been commenced in good faith longer than a reasonable time after the claimant shall have discovered that he cannot legally succeed, subjects the claimant to liability under the Statute, just as if he had interposed the claim for delay only.

[9.] A verdict having been rendered against the claimants, they moved for a new trial, which was refused by the Court, and they now say that the Court erred in not granting the new trial on the foregoing grounds, and on the ground that the verdict was contrary to evidence.

Upon an examination of the testimony, we are satisfied that there was some evidence on both sides.    In our opinion, the preponderance was against the verdict of the jury, but not sufficiently so to suggest improper bias or gross misapprehension,

and therefore not sufficient to authorize any interference with the verdict on this ground.