— Lumpkin J.

By the Court.

delivering the opinion.
We see nothing in the record in this case, which would authorize the inference, that the services rendered, by the ¡plaintiff to the defendant, were a gratuity; and to make this assumption the ground of a charge to the jury. Nor is it true, that the right of the plaintiff to compensation is to be tested by his intention. He may not have intended charging for his services. Still, if he did not communicate that intension, but kept it to himself, it will constitute no bar to this suit. He might contract to serve for a salary, and yet secretly intend not to claim it. Surely, this private purpose shut up in his own bosom, and undeveloped by words or •acts, will not be in his way. We repeat, we see not a particle of proof in the record to authorize the charge upon this point to the jury. And while it is quite likely that the effect of this charge was to incline the jury to undervalue the services of the plaintiff, still, as they found something, we are bound legally to say, that they did not take this view of the case, and that consequently a new trial could not be granted <on that account, notwithstanding the error of the Court.
It is rather questionable whether the depositions of Holland and Austell were not admissible. Perhaps their testimony could be presented in a less objectionable shape, by asking those witnesses what the services of a bank President were worth, who rendered such services as were shown to have been performed by the plaintiff, besides giving the institution the credit of his name, which was worth more perhaps to this bank than any thing else. Besides, the *203 amount of business transacted by this bank, is an element to be taken into the computation, when fixing the pay to which the President is entitled.
And although this suit is not for a specific sum — as a salary — why may not the salary of Burch, the President of this bank, as well as the salaries of Presidents of other banks of like character and business, be given in evidence to show, even under a quantum meruit, what the bank itself thought such services worth ?
[1.] As to the finding of the jury, that the bank dividends were paid, it is unsupported by a scintilla of proof. And it was error in the Court to refer this, as an open issue, for the jury to try.
The idea, we suppose, upon which the charge was given, and the jury acted, upon this branch of the case, was : That Dr. Renwick, being an officer of the bank, could so conveniently have drawn his dividends, he must have received them. But because he was an officer of the bank, that gave him no snore right to thrust his hands into the vaults of the bank, and draw out the money, than if he had been an entire stranger. Many stockholders suffer their dividends to accumulate, especially if the amount is small, and th.ey are not needing funds. Where are the vouchers for the payment of these dividends? Does any bank pay dividends without taking the necessary acquittances ? Such is not my experience, nor the experience, we apprehend, of any stockholder. Surely, evidence that the dividends were declared, and that is all we have upon the subject, is no proof of their payment.
it is suggested by counsel for the defendant in error, that rather than send the case back, if we think the testimony insufficient to support the verdict, as to the dividends, that they will pay the sixty dollars rather than be troubled with another trial.
[2.] The Court has the power, and has used it, to grant new trials.upon terms ; that is, unless the successful party will write off the excess above what is right. But we have *204 no power too add to a verdict. It Avould not be operative. This appeal had best be addressed to the plaintiff, by Avay of tender or otherwise.
Judgment reversed.