FRANCIS L. DYE, plaintiff in error, *vs.* CHARLES J. DEN-
HAM, defendant in error.

1. When an action was brought for damages caused by the illegal suing out
   and levy of a distress warrant, and there was some evidence of malice and
   want of probable ground, it was error in the court to charge the jury, that
   "in this case you cannot find vindictive damages," and the jury having
   found such damages, it was error in the court to grant a new trial on the
   ground that the jury found contrary to his charge.
2. In an action of trespass the question of damages is a peculiar one, to be
   decided by the jury, and if, under the evidence, the verdict is not unreason-
   able and excessive, the court ought not to interfere.
3. In this case, there was, in our judgment, sufficient evidence to justify the
   verdict for vindictive damages, notwithstanding the defendant's consulta-
   tion with a respectable attorney.

Damages. Charge of Court. Immaterial error. New trial.
Before Judge GIBSON. Richmond Superior Court. April
Term, 1874.

On the 7th day of December, 1872, Denham made affida-
vit that on the 25th of November, 1871, by contract in writ-
ing annexed, Dye rented from him the "Egypt plantation,"
for the year 1872, and agreed to pay him, as rent, half of
everything made on the plantation, which he has failed to do,
and that he was seeking to remove the crop from the premises;
that Dye was indebted to him for his half interest in the crop
as landlord, and for such advances as have been furnished by
him to make the crop, the sum of $273 05, and also the further
sum of $66 00 for corn not delivered.

A warrant was the same day issued and handed to Den-
ham, who delivered it to Goode Bryan, deputy sheriff. A
levy was at once made on "one crib of corn containing five
hundred bushels, more or less." Denham accompanied the
sheriff when he made the seizure.

The agreement referred to in the affidavit was dated No-
vember 25th, 1871, obligated Denham to furnish the said
plantation, mules, wagons and plantation tools, then on the
place and to loan Dye three hundred bushels corn to feed the
mules during the year. Dye agreed to cultivate the planta-

Dye *vs.* Denham.

tion, take care of the stock, to shuck the corn then on the place belonging to Denham, and to haul to market without cost; to do all needed fencing, to furnish seed to plant the crop, and the labor, to repay borrowed corn, after which everything made upon the place was to be equally divided between said parties.

On the 21st day of December, 1872, Dye made counter-affidavit, denying that the sum claimed by Denham as rent aforesaid, or any other sum, was due, and tendered the same to the sheriff. The sheriff refused to receive such paper and proceeded with the sale.

On June 16th, 1873, Lawrence & Rigsby obtained in the superior court, a rule against the sheriff, reciting that said sheriff had in his hands a certain sum of money arising from sale of corn, under a distress warrant in favor of Denham *vs.* Dye, which said firm claimed under a merchant's lien, and obtained an order requiring said sheriff to return instanter the amount of money in his custody, how arising and by whom claimed.

The sheriff answered that he held $180 00 net proceeds of sale of three hundred and sixteen bushels corn levied on and sold under a distress warrant in favor of Denham *vs.* Dye, returnable to April term, 1873, of Richmond superior court; that besides said distress warrant, he had in his possession a *fi. fa.* on foreclosure of merchant's lien in favor of Lawrence & Rigsby, a *fi. fa.* on foreclosure of laborer's lien in favor of Sim. Sapp, a common law *fi. fa.* in favor of Fleming, Staples & Company, and a justice's court *fi. fa.* in favor of McLaws & Ganahl, all claiming said fund.

At chambers, October 18th, 1873, the fund in court was distributed by the judge, upon consent that he should determine the law and facts. He decided "that proceedings by distress warrant did not lie; that under the contract Dye had no right to give any lien or to sell any property until Denham was settled with, but that the fund being in court he would do what was equitable and legal in the premises. He there-

fore awarded to Denham $53 20; to Lawrence & Rigsby and Sim. Sapp the balance *pro rata* on their claims."

On the 26th day of September, 1873, Dye filed his writ in Richmond superior court, claiming $3,000 00 damages from the said Denham, for that on the 7th December, 1872, he was lawfully possessed, in his own right, of one thousand bushels of corn then gathered and housed, together with sundry other products then on the Egypt plantation; that on said day said Denham maliciously contriving to injure him, well knowing that he was not indebted to him for rent, nevertheless made oath that he was so indebted $273 05, besides $66 00 for corn not delivered, and thereupon caused a distress warrant to issue and be levied upon said corn, and the same to be afterwards sold at sheriff's sale on the first Tuesday in January, 1873.

At the April term, 1874, said case was tried, whereupon, in addition to the proceedings hereinbefore set forth, the following testimony was submitted:

F. L. DYE—Farmed in 1872 with defendant; was not indebted to Denham on the 7th December, 1872, one cent for rent; Denham never claimed that I owed him any rent, or made any demand upon me for such debt; Denham and I, just prior to the issuing of the distress warrant, had some trifling dispute, when Denham said "he would break me up or sink the plantation;" not less than nine hundred bushels of corn were levied on by the distress warrant, worth seventy-five cents per bushel; tendered sheriff counter-affidavit, which he refused to receive; estimated damages at $3,000 00; knew the amount of corn in the crib from having measured it by loads in the division of the crop, and from the number of loads hauled out since; recovered nothing from the place after the levy; shucks from corn I had sold were worth $1 50 per hundred; the distress warrant ruined my credit, prevented me from making arrangements to plant another year, and threw me and my family upon the world; was delivering corn to Lawrence & Rigsby when closed down upon in payment of advances; delivered them a load the day of the levy; was getting seventy-five cents per bushel for it; was indebted to

Dye *vs.* Denham.

Warren when I began farming with Denham, but Warren had no lien on mules; had four mules.

JOHN W. RIGSBY—Is a member of the firm of Lawrence & Rigsby, merchants; in December, 1872, furnished provisions to run "Egypt plantation," cultivated by Denham & Dye; Denham told witness 'that he and Dye were running the place on shares, and to credit Dye to the amount of $100 00; Dye was delivering corn to firm in payment of advances when distress warrant was levied; delivered a load December 7th, 1872; foreclosed their lien after levy of distress warrant, and got $100 00, in the distribution; credited Dye before distress warrant was levied; would not have done so afterwards, because could see no prospect of getting pay; declined to go on Dye's bond to replevy the corn, because bond was for double the value of the property; thinks Denham asked them to assign their claim to him; he came to witness and advised him to shut down on Dye; did not do so until after Denham had levied his distress warrant; believes Dye would have paid him if he had not been shut down on.

R. W. MARLER—He was the justice of the peace that issued the warrant; at the request of Denham he added to the affidavit the words "also the further sum of $66 00 for corn not delivered."

FOR DEFENSE.

C. J. DENHAM—Farmed with Dye in 1872; never had settlement; Dye owed a balance; consulted F. H. Miller, Esq., upon what course to pursue; showed him the agreement under which we farmed; by his advice sued out and had levied the distress warrant; did not do so to injure plaintiff, but to recover debt; added to affidavit as prepared by Miller, because he told me that the court might not allow me for the corn, but to include every charge against plaintiff; is a landlord; didn't know distress warrant was for collection of rent; had issued one before this; witness purchased the corn at sheriff's sale for seventy-one cents per bushel; corn was sold at market-house, to be delivered on plantation, six miles below Augusta, on the river.

F. H. MILLER—Defendant consulted witness on the agreement; advised him his remedy was by distress warrant; that was his legal opinion then, and is so now.

GOODE BRYAN—Was deputy sheriff, and levied distress warrant; sheriff could not go, and Denham came to me and carried me to plantation in his buggy; he pointed out the corn; did not measure it; were good many shucks in the crib; estimated the corn in crib to be as entered in levy; turned it over to the sheriff.

C. H. SIBLEY, sheriff—Sold the corn; answer to rule correctly states the quantity and net proceeds of sale; three hundred and sixteen bushels, $180 00; costs were $80 additional; corn was sold deliverable from plantation six miles below Augusta; Dye tendered counter-affidavit, but witness refused it without security.

The defendant also introduced the original articles of agreement, a copy of which was annexed to distress warrant and heretofore described.

The jury found for the plaintiff $350 00. The defendant moved for a new trial upon the following grounds, to-wit:

1st. Because the court refused to charge the jury "that plaintiff cannot recover unless the evidence shows that Denham's suit against Dye was malicious and without probable cause, and before you can find that there was no probable cause, the facts and circumstances must have been such as to satisfy a reasonable man that Denham, the defendant, had no ground for proceeding but his desire to injure the plaintiff."

2d. Because the verdict of the jury was contrary to the following instructions of the court: "that the plaintiff was entitled to recover only such actual loss as he proves," and "that when a man in good faith institutes a suit, under legal advice, he is not liable for exemplary damages, but only for the actual damage sustained."

3d. Because the verdict of the jury was contrary to the charge "that the measure of damages in this case was the difference between the value of the corn levied on and sold, and

Dye *vs.* Denham.

the price for which it sold, to which must be added the costs of the proceeding."

4th. Because the verdict was contrary to the law and the evidence.

The court sustained the motion and the plaintiff excepted.

H. CLAY FOSTER, for plaintiff in error.

JAMES C. C. BLACK, for defendant.

McCAY, Judge.

1, 2. It is the settled policy of this state that a judge shall not, either in his charge or in the progress of the cause, express to the jury his opinion upon what has been proven. If he do so, it is made the duty of this court, if the judge below refuses to grant a new trial, to order one with such directions as this court may lawfully grant: Code, section 3248. That the judge did this, in this case, is unquestionable. He called their attention to the evidence as to the advice of Mr. Miller, and after saying that one who, in good faith, acted under the advice of a respectable lawyer, was not chargeable with vindictive damages, he said to the jury that in this case they could not give vindictive damages. He expressed his opinion to the jury that under the evidence, they could not on this point find for the plaintiff. He passed his judgment upon the credibility of the witnesses and on the effect of the evidence. Under the statute this was illegal, and had the jury found in accordance with the charge it would have been the duty of the judge, and if he did not do it, of this court, to grant a new trial. But the jury did not find according to the charge, and therefore this expression of opinion did no harm; the party injured by it does not desire a new trial. The judge has, however, granted it because the jury found contrary to the charge, and that judgment is complained of. We recognize the law to be that a jury is to look to the court for the law; that as a general rule, in civil cases, a finding contrary to the charge, ought not to stand. But this is, in the main, because

the charge is right and the verdict, if contrary to the charge, is an illegal verdict. But suppose the charge is wrong? In such a case there is no fault in the jury if they find contrary to it. Perhaps in a civil case the jury, whatever they may think, ought to do as the judge directs them, leaving this court to correct the error. But in this case the charge was not heeded by the jury—they found contrary to it. It is but natural the judge should grant a new trial, and we, in ordinary cases, where his opinion was one upon the evidence, would be slow to interfere with it, since he, the judge, has, under the statute, discretion to a certain extent in granting new trials under the evidence. At last, therefore, the question is, was there such evidence as to the want of malice on the part of the defendant below in suing out the distress warrant, as to make the verdict of the jury illegal for want of evidence.

3. We think not. True, the evidence that Mr. Miller advised him he had a right to a distress warrant is unquestioned, and we recognize the law as laid down by the judge, that one acting in good faith under such advice, ought not, even though the advice be wrong, be subjected to vindictive damages. They are a punishment intended as a warning, and it is absurd to expect that a man shall be warned from doing what he has the best of reasons for thinking to be right. But it appears that the defendant below had, as was found by the judge on the distribution of the money, not only no claim for rent but no claim of any kind beyond $53 00. Mr. Miller's advice did not justify a distress warrant for $339 00. It was the large claim in this distress warrant which did the harm. Had it been for the true amount due, however illegal, it is probable the defendant in it could have replevied, and thus saved the loss and sale of his property. We see nothing in the evidence to explain or justify this. So far as appears, the plaintiff in that proceeding not only used an illegal process but he used it harshly and oppresively. In the evidence on the trial it would have been competent to explain or extenuate this, but not a word was said. We think Judge GIBSON overlooked this, and that, in fact, this one circumstance justi-

fies the verdict, and if to this be added the other evidence, we do not see why the jury were not perfectly justified in their finding. These summary processes are very common. We are satisfied they are often abused, and it was not unwise in the jury to give this warning.

Judgment reversed.