SAVANNAH, FLORIDA AND WESTERN RAILWAY *vs.* HARPER *et ux.*

[This case was argued at the last term, and the decision reserved.]

1. Where it appears that counsel was aware of the existence of testimony before the trial, but caused a subpœna to be issued for the witness desired under an erroneous name, and there is no explanation as to how the mistake occurred, and the evidence, if procured, would be merely cumulative, a new trial will not be granted on the ground of newly discovered evidence.

(*a.*) Besides, the character of the newly discovered witness was impeached by the affidavits of two persons, and although it was sustained by the affidavit of one person, doubt was cast upon its credibility.

2. Where general damages have been recovered for a personal tort, if they are so excessive as to lead the court to suspect bias or prejudice, he may grant a new trial; but the judge has no power to say that the verdict in such a case should not exceed a specified sum, and to require the plaintiff to write off a portion of the damages, and thereupon refuse a new trial. *Aliter*, in actions on contracts or for torts to property, the value of which may be ascertained, and in relation to which fixed rules for measuring damages are recognized.

May 1, 1883.

New Trial. Damages. Practice in Superior Court. Verdict. Before Judge TOMPKINS. Bryan Superior Court. May Term, 1882.

To the report contained in the decision it is necessary to add only that Harper and wife brought suit against the Savannah, Florida and Western Railway to recover damages for a personal injury to the latter, alleged to have been caused by the negligent running of a train on said railway. On the trial, the jury found for the plaintiffs $6,000.00. A motion was made for new trial and the judge passed the following order:

"After argument upon the original and amended motions for a new trial, and after considering all the facts and circumstances of the case, it is considered, ordered and adjudged that the motion for new trial be granted, unless the plaintiffs shall within five days write off from said verdict of $6,000 the sum of $2,000, leaving the verdict to stand as if originally given for $4,000; and, in event said verdict shall be so written off, then the new trial is refused and denied."

The plaintiffs accepted the terms of the order, and wrote off the amount required thereby. Defendant excepted.

CHISOLM & ERWIN, for plaintiff in error.

WILLIAM CLIFTON; LESTER & RAVENEL, for defendants.

HALL, Justice.

The verdict was for six thousand dollars. The defendant below and plaintiff in error moved for a new trial upon these grounds:

Savannah, Florida and Western Railway *vs.* Harper *et ux.*

(1.) That said verdict is contrary to law.

(2.) That it is contrary to the evidence.

(3.) That it is strongly and decidedly against the weight of evidence and the principles of justice and equity.

(4.) That it is without evidence to support it.

(5.) That it is excessive.

This motion was amended because of newly discovered evidence.

At the hearing, the judge ordered a new trial, unless the plaintiffs would within five days write off from said verdict the sum of two thousand dollars, leaving it to stand as if originally given for four thousand dollars; in which event the motion for a new trial was denied and refused. Within the time prescribed, the plaintiffs wrote off from the verdict two thousand dollars, and the new trial was thereupon refused. The errors assigned by the bill of exceptions are:

(1.) The refusal to grant the motion for a new trial.

(2.) In not granting the same without terms or conditions.

(3.) In not granting the same unconditionally, as prayed for, upon each and all the grounds of the motion and the amendments thereto.

1. We will first dispose of the amended motion. The new trial should have been refused upon the ground therein set forth. The newly discovered evidence was merely cumulative. No diligence was shown to procure it, and no satisfactory reason is assigned for the want of such diligence. It does not appear from the affidavits filed in its support when and how it was discovered, and therefore, whether the evidence in question was in fact newly discovered. On the contrary, it appears that defendant's counsel had a subpœna issued for a person supposed to be the witness in question, but by the wrong name, and was unable in consequence to have him served, and that he did not discover the mistake until some time after the trial was had. He knew of the evidence before the trial, but was mistaken as to the name of the witness

by whom the facts could be proved. How the mistake occurred, and how far the defendant was at fault in not detecting it earlier, does not appear. Code, §3716, and cases cited thereunder.

Besides, the character of the witness, Dizor, by whom this new proof was to be made, was impeached by the affidavit of two persons, and although it was sustained by the affidavit of a single person, doubt was thereby cast upon his credibility. 57 *Ga.*, 329, (5.)

2. It is evident from the order overruling the motion for a new trial, that the presiding judge was dissatisfied with the finding of the jury, so far at least as respects the amount of damages found; that he considered this finding so excessive as to justify the inference of undue bias upon the part of the jury; or if not that, he had reason " to suspect bias or prejudice in them;" and that, if he had not thought he had the power of remitting a portion of these damages, he would have set aside the verdict and granted a new trial upon this ground.

That he had the power to grant the new trial because the general damages or " such as the law presumes to flow from any tortious act, and which may be recovered without proof of any amount," (Code, §3070), was so excessive as to lead him to suspect bias or prejudice, is clear. Code, §§3067, 2947, and authorities there cited. But that he is authorized to fix the amount which the jury should have found may, under our decisions, and indeed under the express provisions of our Code, be well questioned. The language of the first of the above cited sections of the Code (3067), which prescribes the measure of damage where the entire injury is to the peace, happiness or feelings of the party, is that the " verdict of the jury should not be disturbed, unless the court should suspect bias or prejudice from its excess or inadequacy;" the language of the other section (2947) is still more explicit and imperative. " The question of damages being one for the jury, the court should not interfere, unless the damages

are either so small or excessive as to justify the inference of gross mistake or undue bias. " The existence of either one or the other of these must have been suspected or inferred, else there could have been no interference with the verdict. This was a matter in the sound discretion of the court, and we cannot say, from any thing that appears in this record, that the discretion was abused in setting aside the verdict, and ordering a new trial. This had, prior to the adoption of the Code, been the course sanctioned by this court in several instances, and in quite a number of others since that time. In *Lang et al. vs. Hopkins, 10 Ga., 45*, Lumpkin, judge, delivering the opinion, declares, excessive damages to be " good cause for granting a new trial; and that the discretion of courts may be properly exercised in this respect in two cases: One where the law recognizes some fixed rules and principles in measuring the damages, whence it may be known that there is error in the verdict, as in actions on contracts or for torts done to property, the value of which may be ascertained by evidence. The other includes suits for personal injuries, where although there is no fixed criterion for assessing damages, yet the court must conclude, from the exorbitancy of them, that the jury acted from passion, partiality or corruption." This case furnishes the text of the last section of the Code above cited, and that includes both classes of cases in which damages may be given, and prescribes the grounds upon which the court may rightfully interfere with the verdict, in the first class of cases, where there has been gross mistake, and in the second, where the finding has been so excessive as to justify the inference of undue bias. In the first instance named, it is an easy matter to correct any excess in the verdict by directing a portion of the same to be written off, for there the law recognizes fixed rules and principles for measuring the damages, and the evidence accurately ascertains what amount should be found. But

in the last, from the very nature of the case, it is impossible to lay down any such fixed rules and principles; and in every such case the amount ot the finding must be largely in the power of the jury, who have no other guide but their enlightened consciences.   To say, therefore, in such cases that this finding should not have exceeded a certain sum, is to invade their peculiar province, and to assume their functions; and to require a portion of the amount so found by them to be remitted, and the balance to stand as their verdict, seems to us unauthorized either by the words of the law, or by the precedents and practice in such cases.

There had been a finding of two thousand dollars in *Duffield vs. Tobin, 20 Ga., 428,* which was an action of slander, and the court below set aside the verdict and ordered a new trial unconditionally. Although he was of opinion, from the rank and condition of the parties in life, that a verdict for a larger sum than five hundred dollars was excessive, yet he did not make the relinquishment of the excess beyond that amount the condition upon which the verdict should stand, and that decision was approved by this court, for the reason that the question, whether the damages found by the jury are excessive, is for the discretion of the court.   In *Atkins vs. Williams, 23 Ga., 222,* which was another action for slander, this court, in reply to the objection that the damages were excessive, seemed to consider that they might be heavy, but inasmuch as the court below trying the case which "must ever receive more light on the question of excessive damages than it could impart to any other court," was satisfied with the finding, it was allowed to stand; there was not enough disclosed to this court to satisfy it they were excessive; and for the further reason that "the boundaries for the amount of damages in cases of this kind were anything but fixed." In Coleman *vs.* Southwick, 9 Johns. R., 45, Kent, Chief Justice, says: "The damages must be flagrantly outrageous or extravagant or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess."

So in Hewlett *vs.* Cruchley, 5 Taunt., 281, Mansfield, Chief Justice, said it was " well acknowledged in all the courts of Westminster Hall, that whether in actions for criminal conversation, malicious prosecution, words, or any other matter, if the damages are clearly too large, the court will send the inquiry to another jury." In the following cases for personal torts, where verdicts were set aside for excessive damages, all, without exception, were sent before another jury. McConnell *vs.* Hampton, 12 Johns., 234; Chambers *vs.* Robinson, 1 Strange, 691; Price *vs.* Severn, 7 Bing., 316; Nettle *vs.* Harrison, 2 McCord, 230. In no similar case has this court, in granting a new trial, ever annexed thereto a condition which would prevent another jury from passing upon the right to recover damages, or upon the amount to be found. *58 Ga., 107, 111; 59 Ga., 426.* The question is a peculiar one to be decided by the jury. *54 Ga., 224.*

The case of *The Atlanta and West Point Railroad vs Venable, 67 Ga., 697,* forms no exception to this remark. It was a suit at the instance of a minor child for the homicide of her mother by the railroad train. The jury, under the instructions of the judge, gave damages for the support of the plaintiff, not from the death of the mother, but from the accident which resulted in her death, and which occurred more than a year afterwards. A majority of the court were of opinion that the plaintiff was entitled to no support for the period intervening between the accident and the death, and having the dates of these respective events, the age of the plaintiff, and what the jury estimated as sufficient for support during the entire time, it was easy to ascertain the amount that ought to be deducted for the time when no support should be allowed. This having been done, a new trial was ordered, unless that amount was written off. This was the simple correction of a mistake, brought about by the error in the judge's charge, and did not interfere with any of the rights or privileges of the jury in fixing the amount of damages; it only carried out what it was reasonable to sup-

pose would have been their finding under proper instructions. Besides, this court, by express provision of law, has power over this subject that is not conferred upon the judges of the superior court. Code, §§ 218, par. 2, 4284. The verdict, under this power, may be reduced, but cannot be increased. *29 Ga., 203.*

Against this unbroken array of authorities, which might be greatly extended, we find nothing save a case or so in the later New York decisions, which give most excellent reasons against the conclusion they have reached, especially 19 Barb., 461, and a case in 3 Mason 102, for a malicious arrest, in which Judge Story, with many misgivings and not without serious doubt, ordered a new trial, unless the plaintiff was willing to remit $500 of the $2,000 found. But it would seem that this learned judge did not continue to hold that opinion, for in a much less flagrant case than that just referred to, he, in the exercise of his discretion, set aside the verdict, and ordered a new trial without condition or qualification. 3 Story's R., 1. In another case, 2 *Ib.*, 670, 671, he thus lays down the rule: "In no case will the court ask itself whether, if it had been substituted instead of the jury, it would have given precisely the same damages; but the court will simply consider whether the verdict is fair and reasonable, and in the exercise of a sound discretion, under all the circumstances of the case, it will be deemed so, unless the verdict is so excessive or outrageous with reference to those circumstances as to demonstrate that the jury have acted against the rules of law or have suffered their passions, their prejudices, or their perverse disregard of justice to mislead them." In Dublin *vs.* Murphy, 3 Sanford R., 19, the superior court of New York, deeming the finding in the case of a personal injury excessive, ordered a new trial unless a part of the damages was remitted. The judge delivering the opinion stated that the "practice was very common in actions upon contract, where the party has recovered more than he is entitled

to." "The only doubt," he says, "is whether in actions of tort (this was an injury to the person) the court can adopt the same practice. We can see," he continues, "no objection to it in principle, and it will often relieve the parties from the expense and delay of a new trial. We find this has been done in an action of trover in the courts of South Carolina. (2 Rich. R., 507; and see 1 Howard, Miss. R., 19)." We, however, perceive strong objections to this course upon principle and upon authority; the analogy upon which this reasoning proceeds, if it has an existence at all, is very remote. It confounds the different classes of cases in which verdicts may be set aside either for small or excessive damages, and wholly ignores the distinction between them. In cases of damage for breach of contract or injuries to personal property, the evidence furnishes facts from which the damages may be accurately ascertained, while in cases of personal torts no such rule can be deduced from the testimony. In this latter class of cases, as we have seen, the damages are such as the law presumes to flow from the tortious act, and may be recovered without proof of any amount; and no measure can be prescribed except the enlightened conscience of impartial jurors. This case derives no support from Boyd *vs.* Brown, 17 Pick., 453, cited by the judge, which rightly held that the court trying had control of the matter. The damage being considered excessive, a new trial was ordered for the assessment of damages only.

The decision does not, we think, show, as was asserted by the superior court of New York, "that the court may give the plaintiff the option to reduce his verdict to an amount which the court would not have deemed unreasonable or excessive," but directly the contrary. The right of the jury to assess the damage was accorded in one case, while in the other it was denied. The power to control does not include the power to find. Like the executive veto, it arrests, but does not, by its exercise, bestow the power to enact. If the court in such a case may reduce

excessive damages, why may it not grant a new trial where the damages found are wholly inadequate, unless the defendant will agree to increase them to an amount that the presiding judge, in the exercise of his discretion, may deem reasonable and proper? Our researches have brought to light only a single case in which it was claimed that such a course has been considered proper; but an examination of the case referred to—Armitage *vs.* Haley, 4 Adol. & Ellis, 917 (45 Eng. Com. L. R.)—does not sustain the practice, as it was by the court asserted to have done in 12 Barb. R., 501. The case was for a tort to the person; the jury found one farthing damages. Dundas, for the plaintiff, obtained a rule to show cause why a new trial should not be had, unless the defendant would consent to the damages being increased to £10, 5s. and 6d., the alleged amount of the surgeon's bill. The argument of the counsel showing cause against the rule, was interrupted by Lord Denman, C. J., with the remark that " a new trial on a mere difference of opinion as to amount may not be grantable; but here are no damages at all," and the counsel for the movant were stopped by the court and a new trial was awarded upon the payment of costs. It will be remarked that there was no attempt here to interfere with general damages as defined and distinguished by our Code, from special damages; that the whole effort was to obtain damages for an amount which was capable of being ascertained by exact computation, and not such as the law presumes will flow from the tort, and cannot be the subject of proof. Besides, the plaintiff in this case made the proposition to settle upon the terms mentioned, and it was for the defendant to accept or reject the offer; whereas, in our case, the motion for a new trial without any proposition for terms of settlement; in that case the terms emanated from the parties, in ours, they were imposed by the judge, regardless of the views or wishes of the parties. An option was given the plaintiffs to accept or reject, but none was given to the defendant.

The defendant made no such offer, and when imposed by the order of the court, excepted to the condition.

There are cases in England and in Massachusetts, in which verdicts in actions for injuries to property have been set aside upon the ground of excessive or inadequate damages, and that question alone sent to another jury to assess the damages correctly, the remainder of the finding being allowed to stand. 12 Peck., 279, 288 ; 17 Ib., 453, 461; 4 Taunt., 555. But it is believed that no case can be found where the circumstances of the entire transaction, as in this case, must be considered in determining the amount of the damages, where, upon the verdict being set aside on the ground of the excess or inadequacy of the damages found, and a new trial ordered, the reassessment of damages was the only issue to be submitted to the jury and they were prohibited from passing upon any other question. Such a course would withhold from the jury the means of effecting the very thing they are required to do. In this very case one of the issues raised was, that the plaintiff's negligence caused the injury of which she complained, or if it did not, then her own conduct contributed to it in such manner as to reduce the damages she might be entitled to recover. As suggested in the case from the 3 Sanford's R., the course pursued here might be desirable, because it would often relieve the parties from the expense and delay of a new trial. The answer to such a suggestion is that neither the venerable sages of the common law nor the wisdom of the legislature deemed it prudent or safe to confide this power to the judge. Without such authority, he has no jurisdiction or power to pass upon or determine questions which the law refers to the enlightened conscience of impartal jurors, and with which he is forbidden to interfere, except where the finding leads him to suspect, or authorizes him to infer, that the verdict is the result of undue bias or prejudice. We are not to consider what would be more convenient or economical than the course marked out by the express

provisions of the law in determining such question, nor do we design to suggest that the course of the court below was influenced by such considerations, however laudable they may be.

We cannot say that there was error in the refusal of the court to grant the new trial upon the other grounds taken in the motion, and although the questions of law growing out of the facts of the case have been elaborately and ably argued, we express no opinion upon them. The charge of the judge is not set out in the record, and as no exceptions have been taken to it by either party, we are to presume that it laid down the law correctly. Therefore, we direct that the judgment ordering the new trial be so modified as to eliminate therefrom the condition upon which it was granted, and that the relinquishment of the plaintiff made in pursuance thereof be annulled.

Judgment reversed.