SHORES vs. BROOKS.

1. For the landlord to go upon the rented premises before the year has expired, break open a locked out-house, and take therefrom the tenant's cotton, against his protest and remonstrance, is a trespass for which punitive damages may be awarded, even though the cotton be bound for supplies which the landlord has furnished, and

though such forcible seizure of it be made for the purpose of selling it and though it be fairly sold and the proceeds applied to the debt for supplies.

2. Where the tenant, after selling to his landlord some of his effects, locks them up in a house in his possession on the premises, and of which he is entitled to the use, and the landlord on finding the house locked, puts another lock on it, not calling upon the tenant to surrender the property sold, and after keeping the house thus locked fo r several days, excluding the tenant from entering or using it, breaks open the house and takes therefrom the property which he has purchased, up to this time having made no demand upon the tenant to deliver it, this also is a trespass for which punitive damages may be awarded.

3. In order to render the advice of counsel admissible evidence in mitigation of damages, it must appear that the advice was given upon a full and fair statement of the facts, or of such of them as were material to the question on which counsel was consulted.

December 22, 1888.

Landlord and tenant. Damages. Trespass. Advice of counsel. Evidence. Before Judge POWELL. City court of Newnan. April term, 1888.

Brooks sued Shores in an action of trespass, making, in brief, the following allegations: About the 26th of October, 1887, while he was absent from home, Shores went there and broke open an out-house where seed-cotton was stored and took therefrom about 3,000 pounds of seed-cotton and 240 bushels of cotton-seed, property of plaintiff, worth about $136. On the following Saturday, in the absence of plaintiff, Shores went to his dwelling-house and went into private rooms there, as he alleged, for stolen property. On the 27th of November, during plaintiff's absence, Shores dispossessed him unlawfully of a pair of mules that were in his peaceable possession, and which he had hired from Shores for the year 1887, and refused and still refuses to return them or to allow reasonable compensation for their hire, which is alleged to be $25. On the 3d of December, 1887, in his absence, Shores went to his home and carried therefrom

and appropriated to his own use wagon gear, bagging, ties and farming utensils, all of the value of $10, the property of plaintiff. On the same day, Shores locked up an out-house of plaintiff, containing about 130 pounds of seed-cotton, thirty-three bushels of cotton-seed and some farming implements, all worth $20, and deprived plaintiff of their use. On the 9th of December, 1887, Shores broke into the out-house, carried away the property referred to and appropriated it to his own use.

The defendant pleaded the general issue; and for further plea alleged as follows: He rented plaintiff a two-horse farm for 1887, and furnished him large quantities of supplies, money, etc. to make a crop, as shown by a bill of particulars annexed, all of which was due and payable as the crops matured and were gathered. Brooks was to pay him also 2,500 pounds of lint-cotton and seed from the same, for rent. Under the rental contract, all the proceeds of the farm were bound for the payment of the indebtedness, to be so applied as rapidly as it could be marketed; and, as defendant understood, he was to have the right and power at any time to so appropriate it. Prior to October 26, 1887, Brooks, disregarding his obligations, etc., and without defendant's knowledge and consent, slipped off two bales of cotton, carried them to market, sold them and endeavored to get the proceeds into his own hands, to defeat the payment of the money he owed defendant, knowing at the time that his crop would not pay him out. In this he would have succeeded but for the intervention of friends of defendant. Learning from this and other conduct of Brooks that he intended to spirit away the crop to defeat the payment of his indebtedness, after he had gathered the 3,000 pounds of cotton mentioned, defendant insisted that it should be carried to gin and

market and paid on his debts; and Brooks would at times promise to do so, and at others evade the question. Knowing the cotton was not safe where it was, and that the crop would be short, and believing that Brooks intended to defeat him, defendant believing that under the contract he had a right to do so, did carry this cotton to market, sold it in the presence of plaintiff, and appropriated the proceeds to the payment of plaintiff's debts, part to Banks & Arnold for guano and the balance to credit of his indebtedness to defendant. In doing this, defendant was moved solely by his desire to secure payment of his debts. Having been told by Brooks that he had put his corn in one room of his dwelling, defendant went therein for the purpose of seeing how much corn there was, but did so by consent of the person in care of the house, and quietly looked at the corn and went out. As to the wagon gear, bagging, etc. mentioned in the declaration, all these things were sold and delivered by plaintiff to defendant, except the gear, which always had belonged to defendant. As to the alleged trespass of the 3d of December, 1887, plaintiff sold to defendant the articles mentioned and received payment for them; but notwithstanding the sale, and before defendant could haul the things away, plaintiff went and locked the place in which they were stored. Finding the place locked, defendant placed his lock also thereon, and it so remained for some days, when defendant went and got the property he had bought and paid for. Plaintiff is indebted to defendant $30.25 balance on account of 1885, and has admitted the indebtedness. This the defendant pleads as a set-off, alleging plaintiff to be insolvent, etc.—By the bill of particulars attached, it appears that plaintiff is due defendant, including the balance on account for 1885, $64.76.

On the trial plaintiff showed as follows : About October 26, 1887, he had locked in an out-house on the premises he had rented of defendant about 3,000 pounds of seed-cotton. He was then due defendant for supplies and for guano purchased by him on defendant's account from Banks & Arnold. He had paid the rent due defendant. Defendant had been trying to get him to carry the cotton to market, but he had refused to do it. Finally defendant told him that if he did not carry it to market and pay his debts to defendant, he would do it for him. He told defendant, "You can do as you please about it, but if you do so I will make you suffer for it." When defendant went to get the cotton, he sent word to plaintiff in his field that he was going to get it. Plaintiff protested; but defendant broke open the house, took away the cotton and sold it to Banks & Arnold; and the proceeds were appropriated to the guano debt, except a small balance, which was placed to plaintiff's credit on his account with defendant. The note for the guano was signed by both plaintiff and defendant. At this time plaintiff had not paid defendant for the rent of the mules. Before this, he had marketed or sold two bales of cotton and tried to get the money on them, not being willing to have them placed to his credit on his account with defendant, because the account had not been drawn off; but he failed to get the money, because the parties to whom the cotton was sold would not pay him, and it went to the payment of his account. He had offered to sell seed-cotton in the field to pay for the hire of a buggy. He went to get the mules once but failed, but afterwards got them, and defendant again got possession of them about December 1st. He sold defendant the seed-cotton, gear, implements, etc. mentioned, but did not sell cottonseed ; and he locked the house containing the cotton, and when he returned at night found that defendant had

placed his own lock on the house, where it remained until December 9, when defendant broke open the house and hauled off the stuff.

The defendant's testimony tended to fully sustain the allegations in his pleas. As to the mules, Brooks had full use of them during 1887 up to December 1st, and then let them run out; they came to defendant's lot; he let them in, and notified Brooks that they were at his service whenever he needed them.

The case was tried before the judge without a jury. He gave judgment for the plaintiff for $135.24. The defendant moved for a new trial on the following grounds.

(1)–(4) The verdict is contrary to law and evidence, and is excessive.

(5) Error in refusing to allow defendant to prove that the act of alleged trespass of December 9th was done by him under the advice of his attorney at law, who advised him that he had a right to do so.

(6) The court, after balancing accounts between plaintiff and defendant, and finding that plaintiff was due defendant $64.76, found a verdict against defendant for $200 aggravated damages, less $64.76.

(7) No actual damages having been proved, a verdict for vindictive or punitive damages is contrary to law and without evidence to support it.

The motion was overruled, and defendant excepted.

W. A. Post and W. Y. Atkinson, for plaintiff in error.

L. P. Barnes and P. F. Smith, contra.

Bleckley, Chief Justice.

1. The evidence indicates that the contending parties were of different colors. The case presents the

race problem in a mild form, which problem, in all its forms, can be solved by the golden rule, "Do unto others as you would that they should do unto you." The landlord broke open his tenant's house, and took therefrom 3,000 pounds of cotton in the seed. This was done in the month of October; and the excuse for it was that the tenant had not paid the charges to which the cotton was subject, and would not sell the cotton nor carry it to market as soon as the landlord thought it desirable. If the cotton was subject (and the tenant did not deny this) to the charges upon it, the landlord had his remedy by law, and had no right to act as his own sheriff in making the seizure. The end which he had in view was not improper, but he was bound to the observance of proper means, as well as a regard to a proper end. Why should he have violated the law to do right, when he could equally as well have observed the law and done right? We cannot doubt that by breaking open the locked out-house to get possession of the cotton, he committed a trespass for which punitive damages might be awarded. And that he acted fairly in selling the cotton and applying the proceeds to the debt for supplies, would be no excuse for the outrage which he committed by illegally and forcibly obtaining possession of it.

2. The tenant sold to the landlord certain property, and locked it up in one of the out-houses of which he was entitled to the use. The landlord, finding that the tenant had put on his lock, added another and let it remain several days. Then, (we may suppose) taking off his own, he violently broke open the house and took therefrom the property which he had purchased. We cannot discover that in all this time, he had demanded possession of the subject-matter of his purchase, and no reason appears why he should have used the violence

that he did to obtain possession. We think that his conduct in this transaction was also the subject-matter of an award for punitive damages.

3. The landlord proposed to show by evidence that, in breaking open the house which contained the goods he had purchased, he acted under the advice of counsel; but he did not offer to prove that in obtaining that advice, he had submitted to counsel the real facts of the case, or such as were material to the question upon which counsel was consulted. The code, §3066, declares, that "in every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff." This being a case in which exemplary damages might be awarded, we have no doubt that in mitigation of those damages, the advice of counsel was admissible. 1 Suth. Damages, p. 747; Cochran *vs.* Tuttle, 75 Ill. 361. Compare Jasper *vs.* Purnell, 67 Ill. 358. Wherever intention is involved as an element of aggravation, advice of counsel is pertinent, although not receivable as matter of justification. Code, §410. Advice of counsel to withdraw claim to avoid damages: *Perkins vs. Attaway,* 14 *Ga.* 27(4). Motive for entering an appeal: *Gilmore vs. Wright,* 20 *Ga.* 199; *Hartridge vs. McDaniel, Ibid.* 398. Excuse by sheriff on rule: *Green vs. Jones,* 39 *Ga.* 521; *Harrell vs. Feagin,* 59 *Ga.* 821. As to suing out distress warrant: *Dye vs. Denham,* 54 *Ga.* 224. Malicious prosecution: *Fox vs. Davis,* 55 *Ga.* 299; *Ventress vs. Rosser,* 73 *Ga.* 535. Suing out attachment maliciously and without probable cause: *McLaren vs. Birdsong,* 24 *Ga.* 271. *Contra* as to fraudulent conveyance: *Smith vs. Wellborn,* 75 *Ga.* 800(5).

The offer to prove advice, to be available, should em-

brace an offer to show that the advice sought and given was based on the actual case. 1 Hilliard Torts, 437, 438. Judgment affirmed.