CENTRAL OF GEORGIA RAILWAY CO. *v.* PERKERSON.

1. There was no error in refusing to grant a nonsuit.
2. In an action for the homicide of a railroad employee, proof of his usual earnings as such employee, within a reasonable period of time prior to his death, is admissible.   There is no arbitrary rule which confines the proof upon this point to what he was actually earning at the very time of his death.

3. The rule that the widow of a railroad employee can not recover of the company employing him for his homicide, if his negligence contributed thereto, was stated with sufficient fullness in the general charge; and if counsel for the defendant desired more particular instructions on this point, the same should have been specially requested.

4. The trial judge has no power to order that, as a condition to the refusal of a new trial, a portion of the verdict shall be written off as excessive, except where, from the application of the law to the evidence, the excess can be accurately ascertained.

5. There was no material error in any of the charges complained of, when read in connection with the whole charge; nor was there any error in the rulings of the court upon the admission of evidence to which exception is taken.

SIMMONS, C. J., and LEWIS, J., concurring specially.

Argued July 19, 1900. — Reargued January 21, — Decided February 26, 1901.

Action for damages. Before Judge Nottingham. City court of Macon. November 30, 1899.

*Hall & Wimberly* and *R. C. Jordan,* for plaintiff in error.
*Guerry & Hall,* contra.

FISH, J. Pearl Perkerson brought an action for damages against the Central of Georgia Railway Company, for the homicide of her husband, Marion A. Perkerson. Upon the trial the plaintiff proved that her husband was killed by the running of the defendant's train; that at the time of his death he was thirty-two years old, and was in the employ of the defendant as a yard conductor or foreman, receiving $65 per.month for his services, which position he had held for about three months; that prior to this he had been for seven or eight years a passenger conductor, in which position he earned from $100 to $110 per month; and then a freight conductor, receiving from $75 to $85 per month. She testified that he gave up his position as passenger conductor, "because of his health, his meals being so·irregular," but she thought he was in perfect health at the time of his death. The mortality and annuity tables contained in the 70th Georgia Reports were put in evidence. The jury returned a verdict in favor of the plaintiff for $10,833.33. The defendant moved for a new trial. The motion was overruled, except as to the ground complaining that the verdict was excessive, upon which ground the court ordered that a new trial be granted unless the plaintiff should write off from the verdict a designated amount. The plaintiff complied with this requirement, and a new trial was thereupon refused. The defendant then excepted to the judgment of the court overruling the motion.

1. The evidence submitted for the plaintiff authorized a recovery in her behalf, and the refusal of a nonsuit was proper.

2. Error is assigned upon the ruling of the court in permitting, over the objection of the defendant, the plaintiff to prove by one of the defendant's witnesses, the usual earnings of a freight conductor in the employment of the defendant. The objection urged to the admissibility of this testimony is, "that plaintiff's husband was what was called a yard foreman, and not a freight conductor, and that plaintiff could only prove what he was earning in the capacity in which he was working, and that it was not competent to prove what might be earned by persons in other employments, but that the same was contingent and speculative, and that said testimony was irrelevant and inadmissible." It appears from the evidence that the plaintiff's husband, at the time of his death, was employed by the defendant as a yard conductor or foreman, and received for his services as such $65 per month. He had been for seven or eight years a passenger conductor, in which position he received $100 per month, part of the time receiving $110 per month. He gave up this position, " because of his health, his meals being so irregular," and then was a freight conductor for not quite a year, earning from $75 to $85 per month, and then took the position in which he was employed at the time of his death, which he had held for about three months. At the time that he was killed by the running of the defendant's train, he was, in the opinion of his widow, the only witness who testified as to his physical condition, in perfect health. Epperson, a witness for the defendant, testified that he was superintendent of the second division of the defendant's railway, extending from Macon to Atlanta and from Barnesville to Thomaston, and as such had charge of the yard in Macon where Perkerson, the plaintiff's husband, was employed and where he was killed. He testified further: "I knew Mr. Perkerson. I had known him I reckon thirteen or fourteen years, may be not quite so long. He was quite young when I first knew him. The first railroading he done was for me. He came to me on the L. & N. He came to me here in Macon, and I recommended him to the yardmaster. I regarded him as a reliable man, and a man that understood his business; bright, intelligent man. When I first knew him my recollection is he was flagging on the work-train. It pays about $50 per month. A good many things on the train are lower

than that. He has been rising in his calling. I don't know, but I suppose his prospects for further promotion were fair; I suppose he could have gotten very easily back to where he had been as passenger-train conductor. I don't think he was intelligent enough to fill positions higher than that. In fact I always thought he would make a first-class conductor, or yardmaster in a small yard. A yardmaster gets different prices, from $90 to $130, and some as high as $150 or $300. I don't think he could have filled the yard here in the course of time. I never had made up my mind at all as to making him yardmaster of Macon, here. He was on the line of promotion, as all men are who do their duty." Counsel for plaintiff in error, referring to the evidence as to the earnings of a freight conductor, in their brief say: "It will be seen from the brief of evidence that a great deal of testimony similar to this in character was admitted. We deemed it unnecessary to assign error in each separate instance, as the principle is the same in all these instances. If it was error to admit testimony as to the earnings of freight conductors, it would, of course, be error to admit similar testimony as to what passenger conductors can earn, and as to what yardmasters can earn; and hence we thought one assignment was sufficient to present the question squarely to the consideration of the court."

Ought the plaintiff in this case, in endeavoring to furnish the jury with data from which to estimate the financial value of the life of the decedent had he lived, have been, so far as his earning capacity was concerned, confined to proof of what he was actually earning at the time of his death? It is pretty well established that in proving the value of the life of a deceased employee it is not competent to prove that he was in the line of promotion in his calling, and the increased rate of wages which he would have received if promoted. 8 Am. & Eng. Enc. L. (2d ed.) 943, and cases cited. See also *Richmond & Danville R. R. Co.* v. *Allison*, 86 *Ga.* 145. The reason for the rule is that the chances for promotion are too remote, and dependent upon too many contingencies, to be considered. 8 Am. & Eng. Enc. L. (2d ed.) 943. It is, however, competent to prove what were the accustomed earnings of the deceased. Abbott's Tr. Ev. (2d ed.) 758; Louisville R. Co. v. Clarke, 152 U. S. 230; McIntire v. New York Cent. R. Co., 37 N. Y. 287, 35 How. Pr. (N. Y.) 36. The apparent reason for this rule is that what a man usually earned, within a reasonable period of time prior to his death, is

about as reliable data upon which to estimate what his probable future earnings would have been, had he lived, as can be found. It is not permissible to prove what the deceased could have earned in a calling in which he had never engaged, but for which, in the opinion of witnesses, he was well qualified. Nor, as we have seen, in the case of an employee, to prove that there were chances of promotion in the service in which he was engaged, and what his earnings would have been if he had lived and been promoted to a more remunerative position than he had ever held. The proof is not allowed to enter the domain of pure conjecture or speculation. But it does not follow from this that proof of what a railroad employee earned up to a short while before his death, in his chosen calling, is to be excluded because at the very time of his death he was not filling the particular position or positions in which these earnings were made. Demonstrated skill and capacity are one thing; conjectural skill and capacity are another thing. Proof of wages actually earned and received by an employee, in a non-political position, for which he had demonstrated his fitness, which go to make up his average earnings, within a reasonable period of time prior to his death, is different from proof of his probable chances, had he survived, to be promoted to a better position than he had ever occupied and for which he had not demonstrated his fitness, in which he could have earned higher wages than he had ever done in the past. In the one case the proof deals with established facts and demonstrated capacity; in the other it has to do with imaginary facts and speculative capacity. In the one case the proof shows what a man has actually earned; in the other it shows what, under speculative contingencies, he could earn. What were this young man's accustomed earnings? What was his demonstrated capacity to earn money? It seems to us that these are questions which a jury could properly consider, along with others involving his age, his health, his habits, his expectancy of life, etc., in determining the financial value of his life. For a period of seven or eight years prior to his death Perkerson, who was only thirty-two years old when he died, had been a passenger conductor, receiving from $100 to $110 per month, which position he voluntarily gave up because his health had been temporarily impaired by reason of the irregularity of his meals. Then he was a freight conductor for not quite a year, receiving from $75 to $85 per month; and then a yard conductor or foreman for

about three months, in which position he was employed at the time of his death.   At the time of his death he was, in the opinion of the only witness who testified on this point, in perfect health.   Under these circumstances would it be fair or just, in estimating the future value of his life, had he lived out his expectancy, to restrict the proof to what he earned for the brief period of about three months immediately preceding his death, when for about eight years immediately prior to this he had been continuously earning higher wages, unless there was something in the proof to show that his capacity to earn such higher wages had been lost or diminished? We think not.   In our opinion it was competent to introduce evidence to show the demonstrated capacity of the decedent to earn money and what his usual earnings were, as a railroad employee, within a reasonable period prior to his death.   The only element of conjecture involved was whether an experienced and well qualified railroad conductor, in good health and only thirty-two years of age, who had voluntarily given up his position as a passenger conductor, who had been for some time before he attained his majority and afterwards in railroad service, and who had been for about three months immediately prior to his death employed by the defendant as yard conductor or foreman, would have again obtained employment as a passenger or freight conductor.   In the opinion of the superintendent of the division of the defendant's railway upon which the deceased was employed when he was killed, and who had known him, as a railroad employee, for thirteen or fourteen years, he could have easily gotten back to his old position as a passenger conductor.   We are of opinion that the evidence was properly admitted for the purpose of showing the usual earnings of the decedent, as a railroad employee, within a reasonable time prior to his death.   It would have been proper to exclude the proof as to what yardmasters usually earn, as evidence upon this point did not tend to show the accustomed earnings of the deceased, he never having been a yardmaster.

3. One of the grounds of the motion for a new trial complained that the court "wholly failed to charge or instruct the jury upon the defense developed at the greatest length in the testimony of the witnesses for the defendant, and most stressed, viz.: that, as the defendant contends, it was negligence on the part of plaintiff's husband to put himself in a place of danger, where he was killed, with-

out taking such steps as were proper and required by the rules of the company, and the rules of prudence, to make his presence known to the persons in charge of the engine, and to notify the engineer, or other person in charge of the engine, not to move the train while he should thus be at work in a position of danger; and wholly failed to instruct the jury that it was for them to say whether or not such omission on his part constituted negligence, and whether or not such omission and failure on his part might be looked to by them in determining the question of his fault or freedom from fault in and about the matter which caused his death." The court did charge: "If the jury should believe from the evidence that the deceased, Marion A. Perkerson, negligently, either immediately or remotely, directly or indirectly, caused the injury or any part of it, or contributed to it at all, the plaintiff would not be entitled to recover in this case. In order for the plaintiff to recover, the plaintiff's husband must be blameless about the business which caused the injury." And further charged: "If you find from the evidence that a drawhead had been pulled out from the caboose by an engine of the defendant company that had been connected with a train; and if you find that the yard conductor, Marion A. Perkerson, was seeking to remove that drawhead, and if you find he exercised prudence and care in doing so; and if you find that he was, while doing this work, if you find he was in the discharge of his duty, exercising all prudence and care, he was killed by the negligence of the defendant company, you would then be authorized to find a verdict for the plaintiff. If you find, on the contrary, that in the discharge of that duty he was not exercising all care and prudence, and if he was killed in the exercise or discharge of that duty, whether by the negligence of the company or not, you would be authorized to find for the defendant; provided, you find that the fault, if you find a fault on the part of Perkerson in the discharge of that duty, contributed, in an appreciable degree, to the injury or blows that he received that brought his death. Now, gentlemen of the jury, in ascertaining the truth as to that transaction you look to all the evidence and surroundings, and determine whether or not the yard conductor, Perkerson, was in the discharge of his duty upon that occasion; whether he was exercising the prudence and care that was proper and commensurate with the surroundings; you consider the surroundings and consider all

the facts and circumstances relating to the transaction as it existed. . . Now, look to all the facts and circumstances as to how that drawhead was removed, and how it was carried away. . . The question, gentlemen of the jury, upon that proposition, is whether or not the yard foreman, Perkerson, in the discharge of that duty, exercised the prudence and caution that was properly commensurate with the danger, if there was any danger in the work." The parts of the charge we have quoted, as well as other parts of it, stated with sufficient fullness that the plaintiff could not recover if her husband's negligence contributed to his homicide; and if counsel for defendant desired more particular instructions on this point, the same should have been specially requested.

4. As we have seen, the plaintiff recovered a verdict for $10,-833.33. In reference to the ground in the motion for a new trial that the verdict was excessive, the order of the court rendered upon the hearing of the motion recites: "As to said ground it is ordered and adjudged by the court that a new trial be and is hereby granted solely on said ground, unless the plaintiff in said suit shall write off from the verdict the sum of two thousand, three hundred, thirty-three dollars, and thirty-three cents, so as to leave the recovery in said case amounting to eight thousand and five hundred dollars, and said latter sum to bear interest at seven per cent. per annum from the date heretofore rendered in said cause. . . But in the matter of amount the court finds that a verdict of eight thousand and five hundred dollars would have been and will be a proper one in said cause, doing substantial justice to all parties." The defendant excepted to the overruling of its motion for a new trial, and made the point that the judge had no power in this case to order a part of the verdict to be written off as a condition to the refusal of a new trial, and, upon compliance by the plaintiff with such condition, to overrule the same. · Under what circumstances the trial judge may order part of a verdict to be remitted is a question upon which the decisions of this court are not in entire harmony. It has been ruled several times, in effect, that where some definite and readily ascertainable portion of a verdict should not, under the law and the facts of the case, have been recovered by the plaintiff, the trial judge may order that such illegal portion be remitted by the plaintiff or a new trial will be granted. In *Vigal* v. *Castleberry,* 62 *Ga.* 600, which was an action upon a trustee's

bond, the court charged the jury that if the trustee charged himself, in his returns, with ten per cent. interest, that would be evidence that he made ten per cent., and the jury should find the principal with ten per cent. interest to the time of the trial. There was a verdict against the defendant, charging him with interest at ten per cent. In his motion for a new trial he complained of the above-stated charge. The court ordered all interest over seven per cent. to be written off, and, upon compliance by the plaintiff with such direction, that a new trial be refused. The plaintiff complied with such order. Upon exception by the defendant, this court decided there was no error in the ruling made by the trial judge. In that case the illegal part of the verdict was apparent and there was no uncertainty about it. *Whaley* v. *Broadwater*, 78 *Ga.* 336, was a suit on an account. One of the defendant's pleas was set-off. The plaintiff admitted his indebtedness to the defendant in a given sum. The jury found for the plaintiff the full amount of the account sued on. The defendant moved for a new trial, which the court granted, unless the plaintiff would write off the amount admitted to be due the defendant. The plaintiff complied with such condition; whereupon the new trial was refused. This court, in affirming the judgment below, ruled that, as there was enough evidence to sustain the verdict except as to the sum written off, there was no error in the disposition of the motion for a new trial made by the court below. In *Brown & Wilkins* v. *Ison*, 105 *Ga.* 722, it was held: "Where the charge of the court complained of in the motion for a new trial could not possibly have affected the finding of the jury, except as to one item in their verdict, and where the amount of this item was written off by plaintiff's counsel, the charge, even if erroneous, was thus made harmless to defendant; and hence there was no error in refusing a new trial on this ground." In that case, upon the hearing of a motion for a new trial made by the defendant, the court directed that the plaintiff write off from the verdict the amount of the item referred to, and, upon this being done, the motion for a new trial was overruled, and the defendants excepted. *Brinson* v. *Reid*, 107 *Ga.* 250, was a suit, in a city court, brought by a guest of a hotel against its proprietor, for the value of lost baggage. The plaintiff recovered $125 as principal and $5 as interest. The defendant filed a petition for certiorari, alleging error in the charge of the court, and complain-

ing that the verdict was excessive. A judgment was rendered in the superior court, overruling the certiorari, on condition that the plaintiff in the court below would write off from his verdict the sum named therein as interest. The interest was written off, and defendant's bill of exceptions alleged error in not sustaining the certiorari generally. This court held: "Even if the charge excepted to was not an accurate statement of the law applicable, it is manifest that it caused no injury to the losing party; and the verdict rendered in the city court being one of which he had no just cause to complain, save as to a single error therein which the superior court corrected, its judgment overruling the certiorari  .  . will not be disturbed." On the other hand, we have the ruling made by this court in *Jones* v. *Water Lot Co.*, 18 *Ga.* 539. There the court charged the jury that they should find nominal damages for the plaintiff, but they found for the defendant; and upon the plaintiff moving for a new trial the court ordered that a new trial be refused, upon the defendant paying to the plaintiff nominal damages and costs. Subsequently, upon defendant tendering, in open court, to the plaintiff one dollar as nominal damages, and the costs, which the plaintiff declined to accept, the court overruled the motion. Upon exception by the plaintiff, this court held, in effect, that the judge had no right to determine what the nominal damages should be, and reversed the judgment below and ordered a new trial. Again in *Mayor of Albany* v. *Sikes*, 94 *Ga.* 30, which was an action for damages for causing plaintiff's land to be overflowed, there was a verdict for plaintiff for $1,500. The court ordered that a new trial be granted, unless, by writing off, the recovery should be reduced to $300. Plaintiff wrote off the amount required by the court. A new trial was refused, and the defendant excepted. This court held: "In view of the conflict and uncertainty in the evidence as to whether the depreciation in the value of the plaintiff's property was occasioned by the flooding incident to the erection of the waterworks, and if so, to what sum the depreciation from this cause amounted, it was error to make the grant of a new trial conditional upon reducing the recovery from $1,500.00 to $300.00. The new trial should have been granted unconditionally."

Where general damages are recovered for a tort to the person, this court has held that the trial judge has no power to say that

the verdict in such a case should not exceed a specified sum, and to require the plaintiff to write off a portion of the damages awarded by the jury, and thereupon refuse a new trial. In *Savannah, Florida & Western Railway Co.* v. *Harper*, 70 *Ga.* 119, Harper and wife sued the railway company to recover damages for a personal injury to the latter, alleged to have been caused by the negligent running of the defendant's train. On the trial the jury found for the plaintiffs $6,000. Defendant moved for a new trial, upon the ground, among others, that the verdict was excessive. The court ordered that a new trial be granted, unless the plaintiffs would, within a given time, write off from the verdict the sum of $2,000, and in the event the verdict should be so reduced, then the new trial was refused. Plaintiffs accepted the terms of the order and wrote off the amount required thereby. Defendant excepted, and one of the errors assigned by the bill of exceptions was in not granting a new trial without terms or conditions. In discussing the power of the trial judge to order a part of the verdict to be remitted, as a condition to the refusal of a new trial, Mr. Justice Hall, who delivered the opinion in the case, said: "In *Lang et al. vs. Hopkins*, 10 *Ga.* 45, Lumpkin, Judge, delivering the opinion, declares excessive damages to be 'good cause for granting a new trial, and that the discretion of courts may be properly exercised in this respect in two cases: One where the law recognizes some fixed rules and principles in measuring the damages, whence it may be known that there is error in the verdict, as in actions on contracts or for torts done to property, the value of which may be ascertained by evidence. The other includes suits for personal injuries, where, although there is no fixed criterion for assessing damages, yet the court must conclude, from the exorbitancy of them, that the jury acted from passion, partiality, or corruption.' This case furnishes the text of the last section of the Code above cited [Civil Code, § 3803], and that includes both classes of cases in which damages may be given, and prescribes the grounds upon which the court may rightfully interfere with the verdict, in the first class of cases, where there has been gross mistake, and in the second, where the finding has been so excessive as to justify the inference of undue bias. In the first instance named, it is an easy matter to correct any excess in the verdict by directing a portion of the same to be written off, for there the law recognizes fixed rules and principles for measuring the damages, and the

evidence accurately ascertains what amount should be found. But in the last, from the very nature of the case, it is impossible to lay down any such fixed rules and principles; and in every such case the amount of the finding must be largely in the power of the jury, who have no other guide but their enlightened consciences. To say, therefore, in such cases that this finding should not have exceeded a certain sum, is to invade their peculiar province, and to assume their functions; and to require a portion of the amount so found by them to be remitted, and the balance to stand as their verdict, seems to us unauthorized either by the words of the law, or by the precedents and practice in such cases." To the suggestion that the course pursued by the trial judge would be desirable, as it would often relieve the parties of the expense and delay of a new trial, the learned Justice said: "The answer to such a suggestion is that neither the venerable sages of the common law nor the wisdom of the legislature deemed it prudent or safe to confide this power to the judge. Without such authority, he has no jurisdiction or power to pass upon or determine questions which the law refers to the enlightened conscience of impartial jurors, and with which he is forbidden to interfere, except where the finding leads him to suspect, or authorizes him to infer, that the verdict is the result of undue bias or prejudice. We are not to consider what would be more convenient or economical than the course marked out by the express provisions of the law in determining such question, nor do we design to suggest that the course of the court below was influenced by such considerations, however laudable they may be."

*Brunswick Light Co.* v. *Gale*, 91 *Ga.* 813, was an action for personal injuries. It was there held: "The court having determined that the ground in the motion for a new trial complaining that the damages found by the jury were excessive was well taken, it was error not to grant a new trial unconditionally, there being in the evidence no guide or criterion by which the court could determine the amount which should be written off." What is said in the opinion in that case in reference to an action for a tortious homicide is obiter, as is what is said upon the same subject in *Mayor of Albany* v. *Sikes*, supra, and in *Savannah, Florida & Western Railway Co.* v. *Godkin*, 104 *Ga.* 655. In *Central Railroad & Banking Co.* v. *Crosby*, 74 *Ga.* 737, which was a suit by a widow for the homicide of her husband, a majority of the court held that

a measure for estimating damages was furnished the jury by proof of the earning capacity of the deceased and the introduction in evidence of the mortality tables; and that where, pending a motion for a new trial by the defendant, counsel for plaintiff voluntarily wrote off from the verdict a given sum, so as to bring the verdict within the measure of damages proved, the refusal of a new trial was not erroneous. In that case the plaintiff's counsel voluntarily remitted a portion of the verdict, and it does not affirmatively appear that the action of the trial judge in overruling the motion for a new trial was in any way influenced by such voluntary act of counsel. It is well settled that one may voluntarily release a portion of a verdict in his favor when it does not prejudice the rights of the other party. *Griffin* v. *Witherspoon*, 8 *Ga.* 113; *Hendry* v. *Hurst*, 22 *Ga.* 312; *Steadman* v. *Simmons*, 39 *Ga.* 591; *Stanford* v. *Murphy*, 60 *Ga.* 164; *Johnson* v. *Duncan*, 90 *Ga.* 1; *Augusta R. R. Co.* v. *Glover*, 92 *Ga.* 132; *Mayor of Brunswick* v. *Tucker*, 103 *Ga.* 233; *Savannah, Florida & Western Ry. Co.* v. *Godkin*, supra. The majority of the court in *Crosby's* case expressly recognized the necessity of the jury having some criterion for measuring the damages before the judge could order a part of the verdict written off and allow the balance to stand, but held that the Carlisle table of the expectancy of life furnished such a criterion when used in connection with the proved earning capacity of the deceased, and for this reason, in the judgment of the majority, that case was not controlled by the ruling in *Harper's* case, supra. Chief Justice Jackson dissented from this view, upon the ground that it was the province of the jury to assess the damages, and that there were no settled and fixed rules for estimating them in an action for a tortious homicide. In support of his opinion that it was impossible in such a case for the trial judge to know what portion of the verdict should be written off, the learned Justice said: "The uncertainty of life — the mere expectancy of its duration — the approach of age — the decline of strength — the hazard of so hard a life, so much exposed and worn — the uncertainty of employment — all these and many more considerations move a jury in estimating damages according to law, and no human being can tell what aliquot part is not supported by evidence and ought to be written off." How can the mortality tables, considered in connection with the earning capacity of the deceased, constitute a criterion for meas-

uring the value of his life, when, as has been held by this court, it
is not essential in an action for a tortious homicide to introduce
such tables in evidence (*Boswell* v. *Barnhart*, 96 *Ga.* 521); and
where they are put in evidence, as repeatedly ruled, they are not
conclusive, but simply data on which the jury may act or not as
they see fit? In *Savannah, Florida & Western Railway Co.* v.
*Stewart*, 71 *Ga.* 446, Chief Justice Jackson, in his concurring opin-
ion, says: "I do not think there is any Procrustean rule in the mode
of estimating the value of a life. The age of the man, the health
he enjoys, the money he is making by his labor, his habits, are data
from which the jury may argue how long he will probably live and
work, and what his life is worth to his wife in its pecuniary value.
I know of no law which requires tables of the probable length of
life and its probable worth to be introduced. They may be a use-
ful circumstance, but are not conclusive or absolutely essential."
This extract was approvingly quoted by Chief Justice Simmons in
*Boswell* v. *Barnhart*, supra.

There being, therefore, no fixed rule prescribed by which the
jury can measure the value of a human life, and the matter, accord-
ingly, being largely left to their discretion, in view of all the data
and circumstances submitted in evidence, it is utterly impossible
for the judge to determine what portion of the verdict is excessive,
since he, like the jury, has no criterion for estimating with any de-
gree of accuracy the value of the life. It would be inconsistent to
allow the judge, who, under our practice, is prohibited during the
trial from even intimating to the jury his opinion on any fact in issue,
after the trial to arbitrarily say what the verdict should be. Such
action would clearly be an invasion by the judge of the peculiar
province of the jury. Again, under our code the judge can direct
the verdict only where there is no conflict in the evidence and where
that introduced, with all reasonable deductions and inferences there-
from, demands a particular verdict. How, then, can he have the
authority to set aside a verdict which it was, under the evidence, in
the discretion of the jury to find, and to substitute therefor some
other amount, which is not only not demanded by the evidence, but
which can not be arrived at under any proof submitted to the jury?
In the case under consideration there was a verdict for the plain-
tiff for $10,833.33. The judge granted a new trial, unless the
plaintiff should write off the sum of $2,333.33, so as to leave the

recovery $8,500; and in the event the plaintiff complied with this condition a new trial was refused, the judge's order reciting that "in the matter of amount the court finds that a verdict for $8,500 would have been and will be a proper one in said case, doing substantial justice to all parties." It is manifest that the verdict for $8,500 was rendered by the judge and not by the jury, and it is impossible to ascertain from the evidence in the case how he arrived at that exact amount. It is evident from his order that he was dissatisfied with the verdict as to the amount of damages found, and that, if he had not thought he had the power of remitting a portion of the damages, he would have set the verdict aside and granted a new trial, upon the ground that the verdict was excessive. The judge may have the power to determine that a verdict is grossly excessive and for that cause to order it set aside, and yet have no power to fix the exact amount for which it should stand. "The power to control does not include the power to find. Like the executive veto, it arrests, but does not, by its exercise, bestow the power to enact." After mature consideration, we are of the opinion that upon principle the rule denying the power of a trial judge to order a remittitur as a condition to the overruling of a motion for a new trial in actions for personal injuries should apply with equal force to an action for a tortious homicide, and, indeed, to all cases where by the application of fixed principles of law to the evidence the excess in a verdict can not be accurately ascertained. There are several decisions of this court, however, which are not in harmony with this rule. In *Eaves & Collins* v. *Cherokee Iron Co.*, 73 *Ga.* 459, which was a suit for damages for breach of contract, the jury found for the defendant, on its plea of set-off against the plaintiffs, a given sum. The court granted the plaintiffs a new trial, unless defendant would write off from the verdict a specified sum, which the judge in his order stated was "allowed for the unroasted ore left by the plaintiffs at the mine." The defendant remitted the amount designated by the court. The court refused a new trial, and the plaintiffs excepted. The record in the case shows that the verdict was for a lump sum, with no indication upon which of the various items in the plea of set-off it was based, nor was there any proof of the exact value of the "unroasted ore left by the plaintiffs at the mine," which the judge arbitrarily valued at a specified sum. In his opinion, Chief Justice Jackson, on this

point, said: "The judge below having given this case a thorough examination, and having granted a new trial, unless the defendant would write off a large part of the verdict which the jury gave it as set-off, and thus having shown the thoroughness of his investigation of the facts, and having approved the verdict with that part written off, and having given, we think, a fair charge, and the plaintiffs in error having shown this court no substantial error of law, our duty is to affirm the judgment." The question whether the judge had the power to order a part of the verdict to be written off does not appear to have been distinctly made or decided in this case. In *Mayer & Glauber* v. *Tufts*, 76 *Ga.* 96, the plaintiff brought trover against the defendants and obtained a verdict for $340. Various estimates were made by the witnesses as to the value of the property sued for, one being as high as $408. The defendants moved for a new trial which the judge refused, on condition that the plaintiff would write off from the verdict $112, which was done. The defendants excepted, and this court held: "There being some evidence to support the verdict, and the presiding judge having required a portion of the verdict to be written off, and refused a new trial, this court will not interfere with his discretion in so doing." In *Carlisle* v. *Callahan*, 78 *Ga.* 320, the plaintiff sued the defendant for damages, for forcibly entering and holding certain property used by the plaintiff while engaged in railroad work. An examination of the evidence in the record in that case discloses that the amount which the plaintiff was damaged by the acts of the defendant and his servants was exceedingly uncertain, as the witnesses for the plaintiff did not agree in their estimates of the damages the plaintiff had suffered. There was a verdict for the plaintiff for $550. The court granted the defendant a new trial unless the plaintiff, within a given time, should reduce the verdict by writing the damages down to $250. The plaintiff wrote off the amount required, and a new trial was refused. The defendant excepted on the ground, among others, that the court had no power to order the damages lessened, it following from his doing so that the verdict was made by the court and not by the jury. Upon the point in question this court ruled: "The court has no power to write off, or order written off, any part of a verdict for damages in an action sounding in tort, where the tort is to the person; aliter where it is to property," citing *Savannah, Florida & Western Ry.* v. *Harper*, and *Central Railroad & Banking Co.* v.

*Crosby*, supra.   Here the court seems to make a distinction, as to the judge's power to have the verdict reduced, between an action for a tort to the person and one for a tort to property, without regard to the question whether the damages in the latter case can be accurately ascertained by the application of the law to the evidence. As we have seen, no such arbitrary distinction was recognized in *Harper's* case, supra.   *Thornton* v. *George*, 108 *Ga.* 9, was a proceeding to foreclose a lien for material furnished the owner of a sawmill. The defendant's pleas involved an accounting between the parties. The amount that the plaintiff was entitled to recover, under the evidence, was very uncertain.   The jury found for him $739.60; whereupon the defendant moved for a new trial, upon the general grounds, and because the court erred in overruling his motion for a nonsuit.   The court ordered that a new trial be granted, unless the plaintiff would write off from the verdict the sum of $400.   This the plaintiff did, and a new trial was refused.   The defendant excepted, and this court held: "Where the verdict for the plaintiff in such a case is, in the opinion of the judge before whom it was tried, excessive, and under order of court the same is reduced by the plaintiff's counsel to an amount for which a verdict of the jury would have been authorized under the evidence, such order of the court is not illegal; and after the verdict is thus reduced, there is no error in the court refusing to grant a new trial on the ground in the motion of the defendant that the verdict was contrary to evidence."

In each of the four cases last cited the amount of damages which the prevailing party was entitled, under the law and evidence, to recover was uncertain and rested largely in the discretion of the jury, under all the circumstances and facts submitted, and in none of them can it be said that the evidence demanded the finding of any definite amount.   We are, therefore, of opinion that the decisions in these cases, to the effect that the trial judge has the power in such cases to order a part of the verdict written off, as a condition to the refusal of a new trial, are not sound, and, as they are now under review, we are constrained to overrule them in so far as they in principle conflict with the rule we have announced above.   The decision in *Sparks* v. *Ætna Ins. Co.*, 62 *Ga.* 198, is really not out of line with the rule we have laid down.   In that case the court awarded a new trial unless the plaintiff would write off a part of the recovery.   The plaintiff complied, reserving the

right to except. This court held that the plaintiff could not except to a judgment with which she had voluntarily complied. The question whether the court had the power to order a part of the verdict written off was not involved in that case, and what was said on that subject in the headnote was obiter. Besides, there is no question that the trial judge may, in a proper case, refuse a new trial upon terms, and such terms may require the writing off of part of the verdict.

There is quite a contrariety of judicial opinion as to the power of a trial judge to order a remittitur in actions for damages where there is no legal measure or standard for fixing the amount of the recovery. See, on the subject, 18 Enc. Pl. & Pr. 124 et seq.; 16 Am. & Eng. Enc. L. (1st ed.) 593 et seq.; 1 Suth. Damg. (2d ed.) §§ 459, 460; 3 Sedg. Damg. (8th ed.) 1322; Field, Damg. § 882 et seq.; 3 Graham & Waterman, New Trials, 1163 et seq.; Tiffany, Death by Wrongful Act, § 178; and the cases cited in these works.

5. The fifth headnote needs no elaboration.

*Judgment reversed. All the Justices concurring, Simmons, C. J., and Lewis, J., specially.*

SIMMONS, C. J., and LEWIS, J. Where in a suit against a railroad company by the widow of a deceased employee, for damages for the homicide of her husband, the main defense of the company was that the employee was negligent in omitting to give the signal prescribed by the company before going between the cars by which he was crushed, it was error for the trial judge, in his charge, to confine the jury to a consideration of whether the employee was negligent after he had gone between the cars, and to fail to call attention to the question whether he was negligent in going between them. For this reason we think a new trial should have been granted, not only for the causes mentioned in the foregoing opinion, but because the judge erred as herein indicated. We do not assent to the correctness of the holding that the charge was not open to the criticism here made thereon.