### A09A1679. JONES v. O'DAY.
(692 SE2d 774)

BERNES, Judge.

Thomas A. Jones III filed the instant lawsuit against David G. O'Day, M.D.,[1] alleging that Dr. O'Day had used an incorrect procedure when he performed vision correction surgery upon Jones. Although Jones had allegedly requested Photo Refractive Keratectomy ("PRK") corrective surgery, Dr. O'Day performed laser assisted in-situ keratomileusis ("Lasik") surgery instead. As a result of the incorrect surgical procedure, Jones claims that he was disqualified from entering Naval flight school and from pursuing his goal of becoming a pilot. Jones's complaint alleged claims of medical negligence and battery, and sought future loss of earning capacity as part of his damages.

Dr. O'Day filed a motion for partial summary judgment as to Jones's claim for future loss of earning capacity, contending that there was no evidence of a physical injury that affected Jones's earning capacity and no evidence establishing the monetary amount of any lost future earnings. The trial court granted the motion, from which Jones appeals. For the reasons that follow, we affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal

---

[1] Jones's lawsuit also named another doctor and The Lasik Vision Institute, LLC ("LVI") as defendants. These defendants, however, are not parties to this appeal.

160

> that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the non-moving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).

(Citation and punctuation omitted; emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

The record evidence shows that between the years 2001 and 2005, Jones was a student at the Georgia Institute of Technology and a midshipman in the Naval ROTC program. Jones's ambition and goal was to become a Naval pilot and ultimately to become employed as a pilot with a commercial airline. However, Jones had poor eyesight, which allegedly rendered him medically ineligible for admission into the Navy's aviation program.

Jones testified at his deposition that his ROTC advisors informed him that he could correct his eyesight to meet the Navy's vision requirements by pursuing PRK corrective surgery. According to Jones, although the Navy did not accept Lasik as a procedure for vision correction in pilots, PRK was a recognized procedure for which pilots could request and obtain a medical waiver.[2] Jones went through an application process and obtained permission from his ROTC commanding officer for the PRK surgery.

Jones had learned that several other ROTC midshipmen had obtained successful PRK surgeries at LVI, and LVI had been recommended by one of his advisors. In May 2004, Jones went to LVI for an initial consultation. He also had two pre-operative examinations in preparation for the surgery. During each of these visits, Jones had allegedly informed the LVI staff that he was seeking to have the PRK surgery for the Navy.

The surgery was scheduled to be performed by Dr. O'Day, a LVI physician, on August 19, 2004. Prior to the surgery, Jones signed a

---

[2] There is no evidence in the record establishing the difference between the two types of vision correction surgery.

consent form, which indicated PRK as the requested and consented-to surgical procedure. Rather than performing the requested PRK surgery, Dr. O'Day instead performed Lasik surgery.

Jones did not apply to the Naval flight school. In December 2005, Jones graduated from college with a degree in management, and became a Naval surface warfare officer.

Jones contends that he was deprived of the opportunity to become a pilot due to Dr. O'Day's negligence. He argues that he is entitled to damages for lost earning capacity and that the trial court erred in granting summary judgment in favor of Dr. O'Day as to his claim. We disagree. Because Jones failed to present competent evidence establishing his claim, the entry of summary judgment was proper.

> Recovery for lost earning capacity is . . . a separate element of damages recovery of which physical injury to the plaintiff resulting in a permanent or total physical disability is the essential element. Damages allowed to a plaintiff for injury to his earning capacity are compensatory, allowing a pecuniary recovery for a diminution in the physical ability to work resulting from an injury to the person of the plaintiff.

(Citations, punctuation and emphasis omitted.) *Leggett v. Benton Bros. &c. Co.*, 138 Ga. App. 761, 765 (1) (227 SE2d 397) (1976). See also *Myrick v. Stephanos*, 220 Ga. App. 520, 521 (2) (472 SE2d 431) (1996).

> The measure of such damages involves numerous considerations, among which are, first, the earnings before the injury, earnings after the injury, probability of increased or decreased earnings in the future, considering the capacity of the injured party, effects of sickness and old age, etc. Recovery for lost earning capacity is an item of special damages which requires some evidence upon which a jury can base with reasonable certainty a finding as to amount of such damages. While proof of the plaintiff's actual earnings, either before or after the injury, is not essential to the establishment of the value of the plaintiff's decreased earning capacity, there must nevertheless appear some evidence, either direct or circumstantial, tending to show what the plaintiff was capable of earning both before and after the injury.

(Citations and punctuation omitted.) *Myrick*, 220 Ga. App. at 521 (2).

A claim for lost earning capacity may not be based upon pure conjecture or speculation. See *Central of Ga. R. Co. v. Perkerson*, 112 Ga. 923, 927 (2) (38 SE 365) (1901). It is not permissible to allow a recovery of lost earning capacity based upon an occupation in which the plaintiff had never engaged or had not demonstrated the skill and capacity to successfully pursue. Id. at 927-928 (2). "The plaintiff may recover for decreased earning capacity, . . . if such be shown; but a jury may not, without evidence to support it, speculate as to increased earnings of an adult person." *Dawson Motor Co. v. Petty*, 53 Ga. App. 746, 752 (3) (186 SE 877) (1936).[3]

There are several reasons why Jones could not prevail on the lost earning capacity claim, any of which authorized the trial court's summary judgment decision: (1) Jones failed to present any competent evidence establishing that he was medically disqualified from Naval flight school as a result of the Lasik surgery; (2) Jones failed to present evidence demonstrating skill and capacity to be admitted into Naval flight school and to become a pilot; and (3) Jones failed to establish that he was physically disabled from becoming a pilot. "[W]here a grant of summary judgment is right for any reason, we will affirm." *Brown v. McGriff*, 256 Ga. App. 44, 45 (1) (567 SE2d 374) (2002). See also *Abellera v. Williamson*, 274 Ga. 324, 326-327 (2) (553 SE2d 806) (2001).

*No evidence of medical disqualification.* Significantly, while Jones contends that he was medically disqualified from Naval flight school as a result of the Lasik surgery, he failed to present any competent evidence establishing the same. Jones did not present any admissible evidence of the medical requirements for admission into Naval flight school. The record contains no evidence or testimony establishing that Lasik surgery was a disqualifying procedure. While Jones testified in his deposition that he had been told that PRK was the only Navy-approved vision correction surgery, his testimony was based solely upon inadmissible hearsay and was not competent to establish approval or disqualification as a matter of fact.[4]

Testimony is considered hearsay if the witness is testifying

---

[3] When the injured person is a minor and is too young to have a work or earnings history, a different rule applies. In that case, the damages for impairment of future earning capacity may be left to the conscience of impartial jurors, without proof of prospective earning capacity. See *J. S. Betts Co. v. Hancock*, 139 Ga. 198, 207-208 (9) (77 SE 77) (1912); *Murray v. Sanford*, 226 Ga. App. 591, 592 (487 SE2d 135) (1997); *Thomas v. Barnett*, 107 Ga. App. 717, 725-726 (3) (131 SE2d 818) (1963). Because Jones is not a minor, this rule does not apply and he was required to provide evidence of his occupational capabilities to establish his lost earning capacity claim.

[4] In his brief opposing the summary judgment motion, Jones relied upon his own deposition testimony to establish his factual contentions. He also presented the affidavit of his

to another party's statement in order to prove or demonstrate the truth of the matter asserted in that statement. Hearsay testimony is not only inadmissible but wholly without probative value, and its introduction without objection does not give it any weight or force whatever in establishing a fact.

(Citations and punctuation omitted.) *In re Burton*, 271 Ga. 491, 494 (3) (521 SE2d 568) (1999). See also *ULQ, LLC v. Meder*, 293 Ga. App. 176, 183 (5) (666 SE2d 713) (2008) ("[H]earsay cannot be considered on summary judgment.") (citation and punctuation omitted). Likewise, to the extent that Jones's testimony amounted to no more than an unsupported conclusion, it could not be considered in ruling upon the summary judgment motion. See *Sherrill v. Stockel*, 252 Ga. App. 276, 278 (557 SE2d 8) (2001). In light of his failure to produce admissible evidence establishing that he was in fact disqualified due to the Lasik surgery, Jones could not prevail on his damages claim.

*No demonstration of skill and capacity.* Even if we were to otherwise hold that evidence of the disqualification was not lacking, Jones failed to establish that he had the capacity to be a pilot. Jones's claim and his expert's damages calculations were based upon assumptions that absent the Lasik surgery, Jones would have been admitted into Naval flight school, would have successfully completed the program, and would have subsequently obtained employment with a commercial airline. Jones did not carry his burden of proof to establish that these assumptions were based upon more than pure speculation.

In his deposition, Jones conceded that the Navy's decision-making authority had not provided any assurances that he would have been admitted into its flight school. While Jones asserted that his qualifications were similar to those of his fellow midshipmen who had been admitted to flight school, he failed to provide any competent evidence of the other midshipmen's qualifications and his testimony on the matter amounted to unsupported conclusions based upon inadmissible hearsay. And while Jones had further testified that his ROTC advisors were "speculating" and had "agreed informally" that he would have been admitted to flight school, but for the Lasik surgery, this testimony also was based upon

---

economist expert to support the amount of his alleged damages. After the trial court entered its order granting the motion, Jones filed the deposition of Lieutenant Brian Wheaton, one of his ROTC advisors. Because the lieutenant's deposition was not presented to the trial court before its ruling, it cannot be considered in this appeal. "Appellate courts will review only evidence presented to the trial court before its ruling on the motion. Additional evidence will not be admitted on appeal." (Citations and punctuation omitted.) *RC Cola Bottling Co. v. Vann*, 220 Ga. App. 479, 480 (1) (469 SE2d 523) (1996).

inadmissible hearsay. Accordingly, the only evidence presented regarding this matter was without probative value and could not be relied upon in support of Jones's claim. See *In re Burton*, 271 Ga. at 494 (3); *ULQ, LLC*, 293 Ga. App. at 183 (5); *Singleton v. Phillips*, 229 Ga. App. 286, 287-288 (1) (494 SE2d 66) (1997).

Moreover, Jones's testimony and academic transcript did not reflect that he was clearly capable of succeeding in the Naval aviation program. He admitted that he had previously been disciplined in the ROTC program for poor academic performance. Although Jones had applied to the Naval Academy, his application was denied. And, while Jones had taken approximately ten hours of private flight lessons when he was in college, he failed to present any evidence as to his performance during the flight lessons. Jones's college degree was in the unrelated field of management, and there was no evidence that Jones had any knowledge or skills that would have transitioned into a successful career as a pilot. While there was evidence that Jones was a midshipman in the Naval ROTC, there was no explanation as to how the ROTC experience prepared him for a career in aviation. Because there was no evidence that Jones had demonstrated the skill and ability to become a successful Naval flight school candidate and pilot, he could not prevail on this claim. See *Central of Ga. R. Co.*, 112 Ga. at 928 (2) (the earnings of yard masters could not be considered for the damages claim since plaintiff had never been a yard master nor demonstrated capacity to serve as one). Compare *Michaels v. Kroger Co.*, 172 Ga. App. 280, 285-286 (3) (322 SE2d 903) (1984) (evidence that plaintiff had worked as a model, but could no longer do so after the injury, supported claim for diminished earning capacity).[5]

---

[5] While Jones cites to numerous authorities from other jurisdictions in support of his argument that a jury question existed, we are unpersuaded. Those authorities that pertinently address this issue are distinguishable in that the adult plaintiffs had presented some evidence demonstrating skill and ability to engage in the respective occupations upon which their lost earning capacity claims were based. See *Briscoe v. United States*, 65 F2d 404, 405-406 (2nd Cir. 1933) (damages based upon future increased earnings authorized where competent evidence showed the deceased's capacity for advancement); *Flatow v. Islamic Republic of Iran*, 999 FSupp. 1, 28 (II) (A) (D.D.C. 1998), abrogated on other grounds at *Haim v. Islamic Republic of Iran*, 425 FSupp.2d 56, 71 (IV), n. 2 (D.D.C. 2006) (damages for the deceased's future earnings were authorized based upon record evidence that she had been a Dean's List student throughout her college career and had demonstrated exceptional academic performance); *Hoffman v. Sterling Drug*, 374 FSupp. 850, 860-861 (M.D. Pa. 1974) (plaintiff allowed to pursue lost earning capacity claim since although he had not taken the examination to become a registered architect, he had graduated from college with a degree in architecture and had served as a draftsman for several years before the injury); *Felder v. Physiotherapy Assoc.*, 158 P3d 877, 884-888 (I) (Ariz. Ct. App. 2007) (affirming denial of summary judgment on lost earnings claim since the evidence showed that plaintiff had been a professional baseball player and a promotion to the major leagues would not have been a different career); *Robinson v. Graves*, 343 S2d 147, 149 (La. 1977) (damages for future loss of earnings as a credit manager were authorized based upon evidence that the deceased had been training and was qualified to

*No evidence of physical disability.* Finally, the record evidence did not establish that the Lasik surgery had physically injured or disabled Jones from pursuing his aspiration to become a commercial pilot. Jones asserted that his economic damages mostly related to his post-Naval career goal to serve as a commercial airline pilot. Pretermitting whether the Lasik surgery caused Jones to be disqualified from the Naval aviation program, there was no evidence that the surgery disqualified or rendered him physically disabled from realizing his pilot aspiration by other means. Significantly, Jones testified that the Lasik surgery had successfully corrected his vision and that he no longer had any problems with his eyes. He further testified that other military branches offered aviation programs from which he could obtain flight skills and that commercial airlines also recruited pilots from the other military branches. Moreover, Jones had previously taken private flight lessons and there was no evidence that he could not obtain flight training from a private aviation program. There was no evidence that the Lasik surgery had disqualified Jones from participating in those other aviation programs. Consequently, Jones's claim that he had suffered a diminished earning capacity was not supported by the record evidence. See *Myrick*, 220 Ga. App. at 521-522 (2). See also *Wells v. Ortho Pharmaceutical Corp.*, 788 F2d 741, 747 (II) (C) (11th Cir. 1986) (striking award for loss of future earnings based upon evidence indicating that plaintiff would be employable). The trial court's decision therefore was proper.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

### DECIDED MARCH 26, 2010.

*Nall & Miller, John D. Hocutt, George R. Neuhauser*, for appellant.

---

become a credit manager before the injury); *Hall v. George*, 170 A2d 367, 369 (Pa. 1961) (evidence of teachers' salaries was properly admitted since the deceased had engaged in first-year studies at a teachers' college and had demonstrated admirable traits before the fatal accident); *Overstreet v. Shoney's Inc.*, 4 SW3d 694, 705-706 (III) (A) (2) (Tenn. Ct. App. 1999) (concluding that plaintiff's claim for diminished earning capacity was not speculative since she was employed as a registered nurse and had demonstrated ability to advance in the nursing occupation); *Texas Farm Products Co. v. Leva*, 535 SW2d 953 (Tex. Civ. App. 1976) (evidence was sufficient to sustain the jury's verdict for loss of earning capacity when the plaintiff was a sophomore college student majoring in political science and had intended to pursue a related law degree); *Borak v. Bridge*, 524 SW2d 773, 776-777 (3) (Tex. Civ. App. 1975) (evidence showing that the deceased would pursue a banking career was properly admitted in support of the damages claim since the deceased was studying and seeking a related degree in business during his third year of college prior to the fatal injury). Compare *Waldorf v. Shuta*, 896 F2d 723, 742-743 (II) (H) (3rd Cir. 1990) (concluding that the trial court erred in allowing the jury to consider whether the plaintiff was entitled to future earnings as an attorney since there was no credible evidence as to his ability and qualifications to become an attorney).

*Owen, Gleaton, Egan, Jones & Sweeney, Frederick N. Gleaton, Richard J. Baker, Weinberg, Wheeler, Hudgins, Gunn & Dial, Rachel A. Fuerst, Buckley King, Robert P. White*, for appellee.